835 So.2d 434 (2003)
STATE of Louisiana
v.
Dale P. BISHOP.
No. 2001-K-2548.
Supreme Court of Louisiana.
January 14, 2003.
*435 Richard P. Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Stephen T. Sylvester, Monroe, Counsel for Applicant.
John W. Rambo, Monroe, Counsel for Respondent.
VICTORY, J.
We granted this writ application to consider whether the court of appeal erred in reversing defendant's attempted second degree murder conviction by concluding that the state failed to prove the element of specific intent to kill. After reviewing the applicable law and viewing the evidence in the light most favorable to the state, we find that the evidence was sufficient to convince a rational trier of fact that all of the elements of the crime of attempted second degree murder had been proven beyond a reasonable doubt. We further find that the trial court's erroneous jury instructions regarding an element of the offense was harmless error. Accordingly, we reverse the court of appeal's judgment and reinstate the defendant's conviction and sentence for attempted second degree murder.[1]

Facts and Procedural History
After reviewing the record, we adopt the following statement of facts set forth by the court of appeal. On June 15, 1985, at approximately 6:00 a.m., the elderly victim, Raymond Eady, walked to a convenience store in West Monroe to purchase beer and then walked to a nearby vacant lot to drink it. Defendant, Dale Bishop, and Kenneth Norris joined the victim and the victim shared his beer with the men. When they finished what was left of the victim's beer, defendant left and obtained more alcohol for the men. After they consumed that portion, Norris left to get yet more beer but did not return immediately.
In defendant's statement to police, he claimed that while Norris was gone, he and the victim had consensual sex. When Norris returned, defendant led him to some nearby bushes where the victim was sitting, still naked from their encounter. Norris began to laugh at the victim and *436 the victim responded by insulting Norris or perhaps pushing him.
Before Norris could strike back, defendant instructed him to stand watch. Norris testified that defendant then proceeded to hit and kick the victim in the face and to cut him in the groin area with either a knife or a broken bottle. After a few minutes, Norris joined in the assault, hitting the victim several times in the head and cutting him once on the upper thigh. Norris further testified that the victim did not cry out or fight back during the beating because defendant threatened to kill him if he resisted.
Defendant and Norris left the wounded victim in the bushes and walked back to the steps where they waited for the next train. About an hour and a half later, three people, including Boyce Hawkins, walked by. Defendant told them several times to steer clear of the bushes warning them that there was a snake in the grass. Hawkins nonetheless walked up to the men and heard the victim moaning. Defendant and Norris then admitted that they had heard the moans for the last 30 minutes. Hawkins then approached the bushes, saw the victim, and called the police.
When officers arrived at the scene, they arrested defendant and Norris for public intoxication. While in custody, Norris gave three separate statements. In the first, he denied any knowledge of the beating; in the second statement, he admitted striking the victim; in his final statement, he accused defendant of inflicting the bulk of the victim's injuries. Defendant gave two statements, first denying any involvement in the beating. Sergeant Jerry Powdrill and Captain Patrick testified that in his second interview, defendant admitted cutting the victim in the stomach and groin area with a broken beer bottle.
The state charged defendant with attempted second degree murder. At trial, in addition to the above evidence, the victim testified that he could not see much of what happened during the attack because his eyes were swollen shut from the beating. However, he did remembered seeing defendant wielding a knife. Linda Armstrong, an expert in serology, testified that she attempted to type blood found on defendant's and Norris's clothing. There was an insufficient quantity of blood on Norris's clothing to analyze; however, the blood on defendant's clothing was type AB, the same type as the victim's.[2]
Dr. Michael Landreneau treated the victim at the hospital. He testified that the victim had sustained severe trauma from blows to the head and chest, had been assaulted by a sharp object that lacerated his eyelids, ears, and scrotum, and that his penis was almost cut in half. There was blood in the victim's left ear canal and rhinorrhea, fluid that bathes the brain, leaked from the victim's nose. X-rays revealed that the victim's nose had been broken so badly that the bones were non-existent. Both of the victim's jawbones had been broken in half. The victim's right cheek bones were smashed and the left cheek bones were completely destroyed. The victim also suffered a basilar skull fracture and a "blowout" fracture on the left side of his face. The doctor testified that more than 70% of the bones in the victim's face had been broken, however, he considered the facial injuries, in and of themselves, non-life-threatening. Nonetheless, the doctor testified that the cumulative effect of the injuries and their complications, compounded by the victim's inebriated state and the delay in seeking *437 medical attention, placed him in danger of losing his life.
After hearing the evidence, the jury convicted him as charged of attempted second degree murder. The court then sentenced him to 50 years imprisonment at hard labor. On December 5, 1985, defendant's attorney filed a notice of appeal. Over the next 15 years, defendant filed several applications for post-conviction relief and eventually obtained a reinstatement of his appeal. The Second Circuit reversed the conviction finding insufficient evidence of intent to kill and instead entered a judgment of guilty to the lesser included offense of aggravated battery. State v. Bishop, 34,637 (La.App. 2 Cir. 7/24/2001), 792 So.2d 886. We granted the state's writ to consider this issue. State v. Bishop, 01-2548, 824 So.2d 1162 (La.8/30/02).

DISCUSSION
In the state's application, it alleges that the appellate court erred when it reversed defendant's conviction finding that the prosecution presented insufficient evidence to prove the element of intent.
"In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).... [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt." State v. Captville, 448 So.2d 676, 678 (La.1984).
To sustain a conviction for attempted second degree murder, the state must prove that the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim's death. La. R.S. 14:27; 14:30.1. Although the statute for the completed crime of second degree murder allows for a conviction based on "specific intent to kill or to inflict great bodily harm," La. R.S. 14:30.1, attempted second degree murder requires specific intent to kill. State v. Huizar, 414 So.2d 741 (La. 1982). Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. La. R.S. 14:10(1); State v. Butler, 322 So.2d 189 (La.1975); State v. Martin, 92-0811 (La.App. 5 Cir. 5/31/94), 638 So.2d 411.
In reversing defendant's conviction for attempted second degree murder, the Second Circuit concluded that the evidence failed to show specific intent to kill, but only showed specific intent to inflict great bodily harm. We disagree. Viewing the evidence in a light most favorable to the prosecution, we conclude that the state certainly presented sufficient evidence to prove defendant possessed the requisite specific intent to kill.
As discussed above, the evidence established that defendant and his companion brutally attacked the victim. The physician who treated the victim stated that most of the bones in the victim's face had been broken during the beating and that it appeared that his attackers had attempted to castrate him.[3] Defendant and Norris left the victim moaning in the bushes for over an hour and a half and actively discouraged passersby from discovering his presence by telling them to avoid the area *438 because of a snake, clearly in attempt to hide him and prevent him from receiving medical treatment. Although neither defendant nor Norris ever resumed the attack as the victim lay wounded in the bushes, given the brutal and humiliating nature of the beating, the jurors could have rationally concluded that the assailants only wanted to prolong his suffering. Merely because he failed to accomplish his objective, does not mean that defendant did not have the specific intent to kill. Assuming they are properly instructed (see below), rational jurors "may infer, as a matter of fact, a specific intent to kill by reason of a specific intent to inflict great bodily harm." Butler, 322 So.2d at 193. Accordingly, viewing the evidence in the light most favorable to the prosecution, we find that the state proved that defendant possessed the requisite specific intent to kill. See State v. Harris, 26,563 (La.App. 2 Cir. 9/21/94), 643 So.2d 779 (erroneous jury instruction harmless in light of overwhelming evidence that the defendant intended to kill the victim by repeatedly stabbing her in the chest, abdomen, neck, face and hands and leaving her for dead in the trunk of his car); State v. Latiolais, 453 So.2d 1266, 1269 (La.App. 3 Cir.1984), writ denied, 458 So.2d 125 (La.1984) (finding evidence sufficient to support attempted second degree murder verdict when defendant repeatedly stabbed the victim in the head and chest area (breaking his nose, puncturing a sinus and fracturing his skull) with a screwdriver, immediately blinding him in one eye and left him bleeding on the side of the road); State v. Williams, 670 So.2d 414 (La.App. 3 Cir. 1996) (evidence sufficient to sustain attempted second degree murder conviction when defendant stabbed the victim several times collapsing his lung and broke several bottles over his head during a fight between the two men); State v. Scoby, 536 So.2d 615, 621 (La.App. 1 Cir.1988), writ denied, 540 So.2d 339 (La.1989) (evidence that defendant stabbed the victim with a butcher knife while the victim was lying on the ground, pursued the victim as he attempted to flee, and that the victim suffered injuries requiring medical attention and a stay in the hospital was sufficient to support attempted second degree murder verdict); cf. State in Interest of Hickerson, 411 So.2d 585, 587 (La.App. 1 Cir.1982), writ denied, 413 So.2d 508 (La. 1982) (holding evidence insufficient to prove specific intent to kill when defendant stabbed victim once in left shoulder). Thus, we reverse the court of appeal's ruling which held that the state failed to prove the element of specific intent to kill necessary for an attempted second degree murder conviction.
There remains defendant's assignment of error at the court of appeal that the trial court erroneously instructed the jury on the elements of attempted second degree murder and that such error requires reversal of defendant's conviction. Defendant also contends in his response to the state's writ application in this Court that the court of appeal's decision to reduce his conviction to aggravated battery reflects its solution to the trial court's erroneous jury instruction. In fact, the Second Circuit did not directly address this assignment of error, although it noted that the issue was closely related to questions raised about the sufficiency of the evidence. State v. Bishop, supra, 792 So.2d at 891 ("Considering that the jury was erroneously led to believe it did not have to find specific intent to kill, we find the alternative hypothesisi.e., Bishop had a specific intent only to inflict great bodily harmsufficiently reasonable to preclude a verdict of attempted second degree murder").
The court instructed the jury as follows:

*439 The defendant in this case is charged in the bill of information with attempted second degree murder of Raymond Eady on June 15, 1985. Here is what the law has to say about attempt. Any person who having a specific intent to commit a crime does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended and it shall be immaterial whether under the circumstances he would have actually accomplished his purpose.... Second degree murder is the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm.
The court repeated this instruction when asked by the jury to redefine each of the responsive verdicts. As stated above, attempted second degree murder requires specific intent to kill. Thus, defendant argues that the court read an erroneous jury instruction which led jurors to believe that they could convict defendant of attempted second degree murder based only on a finding that he possessed the specific intent to inflict great bodily harm, and that such error is reversible error.
In State v. Hongo, we held that an erroneous jury instruction which, in violation of Louisiana law, improperly includes intent to inflict great bodily harm as an element of attempted second degree murder is subject to harmless error analysis. 96-2060 (La.12/02/97), 706 So.2d 419. We held that "an invalid instruction on the elements of an offense is harmless if the evidence is otherwise sufficient to support the jury's verdict and the jury would have reached the same result if it had never heard the erroneous instruction." Id. at 421. "The determination is based upon `whether the guilty verdict actually rendered in this trial was surely unattributable to the error.'" Id. (Citing Sullivan v. Louisiana, 508 U.S. 275, 279, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993)).
In Hongo, where the jury was read the same erroneous jury instruction as is at issue in this case, we held that the error was harmless. There, Hongo entered the victim's residence and shot her, and defendant argued that the victim was accidently shot.[4] We held that, because there was no argument or evidence presented to the jury which would support a finding that the defendant had the intent only to inflict great bodily harm, and that, "given only the two versions that were presented, no reasonable jury could have concluded that defendant had the intent to only inflict great bodily harm." Id. at 422.
This case is highly analogous to Hongo. Here, the defense of this case was not that defendant had simply intended to inflict great bodily harm, but that he did not act as a principal in a beating administered by Norris, or, that if he did so, he was too intoxicated to have formed a specific intent to kill (or to inflict great bodily harm). Accordingly, as in Hongo, "[t]here was no argument or evidence presented to the jury which would support a finding that the defendant had the intent to only inflict great bodily harm." 706 So.2d at 422. "Indeed, given only the two versions that were presented, no reasonable jury could have concluded that defendant had the intent to only inflict great bodily harm." Id. Given Dr. Landreneau's testimony that the victim "was severely beaten or had sustained severe trauma from blows about the head, the chest and in addition had been assaulted by some form of a sharp object that lacerated his eyeshis eye lids, his *440 ears, his scrotum and .. near cut his penis in half" and that while the severe facial fractures sustained by the victim were not necessarily life threatening by themselves, in combination with the cerebrospinal fluid leak caused by a basal skull fracture, together with generalized brain contusions the victim had also suffered, "they are all additive in effect and add to the probable outcome of death," the guilty verdict was surely unattributable to the trial court's erroneous jury charge and would have been the same if the jury had never heard the erroneous instruction.
Further, both the state and defense argued the case to the jury as if attempted murder required proof of a specific intent to kill or to inflict great bodily harm. Nevertheless, the state made clear to the jury that its evidence had proved that defendant had the specific intent to kill the victim when he crushed the bones of the victim's face and nearly castrated him with either a knife or a broken piece of glass. At the end of the state's closing argument, the prosecutor took the position that defendant and Norris "beat up this old man and left him there to die and their intent was for him to die so that they could get away, leave him there for dead, unconscious or dying, and it's a clear attempted second degree murder." On rebuttal, the state then underscored that view of the evidence:
Intent is inferred from the circumstances, the intent to inflict great bodily harm or death. And I submit it's death. I won't argue, I won't insult you with great bodily harm, I'll talk about death to you. That's what this is. If you don't find great bodily harm you're not going to listen to me anyway, but you saw the pictures and you heard the doctor ... His intent is to let the old man die.
The state thus did not ask the jury to return a verdict of guilty as charged on any finding less than a specific intent to kill.
Thus, as in Hongo, we find that the trial court's erroneous jury instruction on an element of attempted second degree murder was harmless error in light of the overwhelming evidence presented that defendant had the specific intent to kill the victim.

DECREE
For the reasons stated herein, the judgment of the court of appeal is reversed and defendant's conviction and sentence for attempted second degree murder are reinstated.
REVERSED.
CALOGERO, C.J., dissents and assigns reasons.
CALOGERO, Chief Justice, dissenting.
This defendant had his appeal entertained at the court of appeal after having spent 15 years in the penitentiary. The court of appeal reversed his conviction for attempted second degree murder, finding insufficient evidence to support that conviction, and entered a judgment of guilty to the lesser included offense of aggravated battery, which carries a maximum penalty of ten years, less time than the defendant has already served. We have granted the State's writ application, for good legal reason, and now find that the court of appeal improperly found that the evidence was insufficient to support the conviction for attempted second degree murder. With that finding, I am not in disagreement.
What bothers me is that the defendant made other assignments of error not addressed by the court of appeal related to the allegedly erroneous jury charge. On that point, the majority here decides that the jury charge was in fact erroneous, but *441 finds, since jury charges are subject to a harmless error analysis, that this court may decide that the error was harmless. The majority then concludes that the jury charge was harmless in light of compelling evidence that supports the jury's essential factual finding of guilt beyond a reasonable doubt.
Therefore, not only does the majority find that the court of appeal was wrong in finding insufficient evidence to support the defendant's conviction of attempted second degree murder, but it finds compelling evidence that the defendant had specific intent to kill. In support of that conclusion, the majority concedes that both the State and defense counsel "argued the case to the jury as if attempted murder required proof of a specific intent to kill or to inflict great bodily harm." Nevertheless, the majority attempts to convince that the jury understood that proof that the defendant had intent to kill was necessary and that the conviction was in fact based on such a finding, notwithstanding the fact that the jury charge was wrong, or minimally misleading, on the necessity of that proof. Further, the majority asserts that the State's rebuttal argument accentuated the need for the jury to find a specific intent to kill.[1] I find fault with that argument. I do not think that the prosecutor's arguments at trial clarified that it was imperative for the jury to find specific intent to kill.[2]
In all events, whether or not the jury instruction is wrong and correlatively whether or not the instruction was harmless in the context of this case are matters not yet addressed on appeal. I dissent from this opinion because I believe the proper procedure, after finding the court of appeal wrong on the sufficiency of the evidence issue, would be to remand the case to the court of appeal to entertain the remaining assignments of error, including the assertedly erroneous jury instruction that did not tell the jury that it had to find an intent to kill and the attendant necessity of finding such error harmless.
NOTES
[1] As discussed below, the court read an erroneous jury instruction which could have led jurors to believe that they could convict defendant of attempted second degree murder based only on a finding that he possessed the specific intent to inflict great bodily harm. See State v. Huizar, 414 So.2d 741 (La. 1982) (Attempted second degree murder requires the higher intent standard of specific intent to kill). Given that the Second Circuit concluded that based on the evidence presented, a rational juror could not have found that defendant possessed the specific intent to kill, it pretermitted any inquiry into whether the erroneous instruction could have had any effect on the jury's verdict or whether it could be considered harmless. See State v. Hongo, 96-2060, p. 3 (La.12/2/97), 706 So.2d 419, 421 (error in giving jury charge which improperly included intent to inflict great bodily harm as element of attempted second degree murder is subject to harmless-error analysis). We will address this assignment of error in this opinion.
[2] Defendant had type B blood while Norris had type O.
[3] Although not argued to the jury, a severe cut to the groin area can be fatal in and of itself.
[4] In Hongo, the defendant testified that he and the victim were struggling over the gun when it accidently discharged twice. The State argued that the defendant entered the residence with the intent to kill the victim but failed to complete his plans.
[1] The majority quotes the following excerpt from the State's rebuttal argument:

Intent is inferred from the circumstances, the intent to inflict great bodily harm or death. And I submit it's death. I won't argue, I won't insult you with great bodily harm, I'll talk about death to you. That's what this is. If you don't find great bodily harm you're not going to listen to me anyway, but you saw the pictures and you heard the doctor ... His intent is to let the old man die.
[2] In the three-sentence argument quoted in footnote 1, the prosecutor did not clearly tell the jury that they had to find intent to kill in order to convict the defendant of attempted second degree murder. Rather, he simply argues, not so clearly, that the facts show that the defendant did have intent to kill.