JOY COSSICH LOBRANO, Judge.
|/The defendant, Michael Dunn, was charged by bill of information on October 23, 2009 with attempted second degree murder in violation of La. R.S. 14:27(30.1). Following trial, the defendant was found guilty as charged. He was later sentenced to twenty-five years at hard labor, with credit for time served.[1] The defendant now appeals.
At trial, Sergeant Mark McCourt of the New Orleans Police Department (“NOPD”) testified that on August 20, 2007, at approximately 7:15 p.m., he responded to a call of gunshots in the 3700 block of Willow Street in New Orleans. Once he and his partner arrived at the scene, they were flagged down by a woman who told them that her cousin was covered in blood and was behind a nearby trailer. Behind the trailer, the officers found the shooting victim, Mr. John Gant, sitting on the ground with his back against the trailer. His shirt and lower half of his face were covered in blood. The officers summoned medical assistance and tried to communicate with the victim, but the victim had difficulty speaking due to |?his gunshot wounds. However, Sergeant McCourt stated that the victim was able to report that the person who shot him was an acquaintance of his known as Twan, which is short for Antoine. Sergeant McCourt testified that the victim told him that the gunman was approximately thirty years old, and had just gotten out of jail for burglary or robbery. The victim’s mother gave the officers a vague description of the gunman, describing him as a black male wearing a white shirt and white cap with plat-style braids underneath the cap. She was not able to identify the shooter for the officers. She said she was sitting in her trailer, looking out of the window, when she saw a black male walking up the front steps towards the porch firing a handgun. Sergeant McCourt identified the evidence seized by other officers at the crime scene.
Detective Douglas Butler testified that he conducted the follow-up investigation of the shooting, and learned that the victim gave information about the perpetrator’s identity to the officers who initially responded to the shooting. He did not go to the scene of the shooting, but visited the victim in the hospital several days later. Detective Butler was unable to interview the victim because he was in a coma. When Detective Butler went back several days later to check on the victim, he learned that the victim’s leg had been amputated. Several months after the shooting, an ATF (Bureau of Alcohol, Tobacco and Firearms) agent[2] contacted Detective Butler to report that the victim had told him who the perpetrator was, and that the victim wanted to speak to Detective Butler about the | .¡incident. In early March 2008, Detective Butler and the ATF agent met with the victim at his residence, and the victim gave the name of the defendant, Michael Dunn, as the person who shot him.
After the victim told Detective Butler that Michael Dunn was the man who shot him, Detective Butler found a subject by the name of Michael Dunn in the depart- *913 merit’s database and assembled a six-person photographic lineup. He brought the photographic lineup to the victim’s residence a day or two after his initial meeting with the victim, and the victim positively identified the defendant’s photograph, without any hesitation, as that of the person who shot him. The defendant was subsequently arrested.
The victim, Mr. Gant, also testified. He stated that on August 20, 2007, he was living with his mother in a trailer at 3736 Willow Street in New Orleans. He had just been dropped off at home after working that day on a construction job. He left the trailer to go to a grocery store. Realizing that he had forgotten something, he turned to go back to the trailer and heard someone approach him from behind. He turned around and saw the defendant, who cursed at him and began shooting at him, striking him five times. The first shot went through the victim’s mouth and lodged in the back of his head. The second shot bounced off his chest. He was shot two times in the back. The victim tried to run, and fell off the porch, breaking his leg. At that point, the defendant shot him one more time causing a graze wound. The victim stated that he was looking at the defendant for “a good ten seconds” during this incident.
|4The victim testified that he knew the defendant before the shooting, and had no doubt in his mind that the defendant was the person who shot him. He stated that the break in his leg from his fall off the porch was so severe that the leg had to be amputated. The victim now wears a prosthetic leg. He described the impact that his injuries from the shooting and fall have had on his life. He was in the hospital for nine months after he was shot. He stated that five doctors have told him he will never work again. In addition to the loss of his leg, the victim chokes every day, has only partial use of his right arm, has paralysis in one of his vocal cords and has a persistent ringing sound in his head.
When asked what happened when police officers arrived after the shooting, the victim stated that he did not remember what happened, did not remember talking to the police that day and did not remember giving the police officers at the scene the name of Twan as the person who shot him. The victim stated that he knows a lot of people named Twan, but had no reason to say that anyone named Twan had shot him. The victim knew the defendant prior to the shooting and recognized him as the person who shot him. He said that the defendant’s hair was in dreadlocks when the shooting occurred. He met with an NOPD officer in March 2008, when he was released from the hospital, to report who shot him. He said that before that time, he was contemplating seeking revenge personally against the defendant. The victim said that ATF agents with whom he was working undercover at the time of the shooting convinced him to contact the NOPD instead. He admitted to two prior convictions for bank robbery.
|sIn reviewing the record for errors patent, we note that during sentencing, the trial court failed to state that the defendant’s sentence must be served without benefit of parole, probation or suspension of sentence. See La. R.S. 14:27 and 14:30.1. However, in State v. Williams, 00-1725, p. 10 (La.11/28/01), 800 So.2d 790, 798-99, the Louisiana Supreme Court stated:
Paragraph A of LA.REV.STAT. ANN. § 15:301.1 addresses those instances where sentences contain statutory restrictions on parole, probation or suspension of sentence.
[[Image here]]
*914 In instances where these restrictions are not recited at sentencing, LA.REV. STAT. ANN. § 15:801.1(A) deems that those required statutory restrictions are contained in the sentence, whether or not imposed by the sentencing court. Additionally, this paragraph self-activates the correction and eliminates the need to remand for a ministerial correction of an illegally lenient sentence which may result from the failure of the sentencing court to impose punishment in conformity with that provided in the statute.
Therefore, for the reasons stated in State v. Williams, supra, this Court does not need to take any action to correct this error. There are no other errors patent.
In his sole assignment of error, the defendant argues that the evidence presented was insufficient to support his conviction for attempted second degree murder because the State failed to negate any reasonable probability of misidentification. As this Court recently stated in State v. Galle, 11-0930, p. 31 (La.App. 4 Cir. 2/13/13), 107 So.3d 916, 935:
Pursuant to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), an appellate court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. State v. Green, 588 So.2d 757 (La.App. 4 Cir.1991). Absent internal contradiction or irreconcilable conflict with the physical evidence, the testimony of a single witness, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Marshall, 2004-3139, p. 9 (La.11/29/06), 943 So.2d 362, 369.
Attempted second degree murder requires proof of a specific intent to kill. State v. Bishop, 2001-2548, p. 4 (La.1/14/03), 835 So.2d 434, 437. Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant. Id. Specific intent can be formed in an instant. State v. Cousan, 94-2503, p. 13 (La.11/25/96), 684 So.2d 382, 390. To obtain a conviction for attempted second degree murder, the State must prove the defendant: (1) intended to kill the victim; and (2) committed an overt act tending toward the accomplishment of the victim’s death. Bishop, supra. When identity is disputed, the State must negate any reasonable probability of misidentification in order to satisfy its burden under Jackson v. Virginia, supra. State v. Everett, 2011-0714, p. 15 (La.App. 4 Cir. 6/13/12), 96 So.3d 605, 619.
Id., p. 31, 107 So.3d at 935.
Under Jackson v. Virginia, supra, an appellate court is not called upon, in reviewing the evidence for sufficiency, to decide whether it believes the witnesses or whether the conviction is contrary to the weight of the evidence but whether, viewed in the light most favorable to the prosecution, there is sufficient evidence to support the conviction. State v. Galle, supra, p. 32, 107 So.3d at 935.
In arguing that the evidence in this case was insufficient to support his conviction, the defendant states that the evidence at trial was that the victim told police right after the shooting that a person named Twan or Antoine had shot him, but then told police seven months later that the shooter was a different person, Michael Dunn. The defendant argues that the victim was either mistaken or not telling the truth when he later identified the defendant as the shooter, and that the victim’s reasons for changing his story were nonsensical. Under these 17circumstances, the defendant argues that the evidence was *915 insufficient to support his conviction for attempted second degree murder.
We review the reliability of an identification using the five-factor test of Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). Those factors are: (1) the opportunity of the witness to view the assailant at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the assailant; (4) the level of certainty demonstrated by the witness; and (5) the length of time between the crime and the confrontation. See State v. Collins, 01-1459, pp. 12-13 (La.App. 4 Cir. 8/21/02), 826 So.2d 598, 608, citing State v. McNeal, 99-1265, p. 6 (La.App. 4 Cir. 6/14/00), 765 So.2d 1113, 1117. The defendant argues that in applying these factors to this case, one must conclude that the victim’s identification of the defendant was unreliable because his prior description of his assailant was inaccurate and because the length of time between the crime and the confrontation was too long under the circumstances. He further argues that the victim’s delay of seven months before naming the defendant as the shooter is highly suspicious given the fact that he allowed the police to believe that the shooter was someone named “Antoine” for all those months. We find no merit in these arguments.
Applying the Manson factors to this case, the victim certainly had the opportunity to view his assailant at the time of the crime. Shortly after he walked out of his trailer, he heard someone approach him from behind and saw the defendant, someone he knew personally. He looked at the defendant for an estimated ten seconds while the defendant shot him five times at fairly close range. His attention was certainly riveted on the defendant as the victim awaited the next shot. As to the accuracy of his prior description, which the victim testified he does |8not remember giving to police at the scene, the testimony showed that one of the five gunshots pierced his mouth and lodged in the back of his head. Sergeant McCourt stated the victim gave him the name of “Twan” as that of his assailant, but also testified that it was very difficult to communicate -with the victim at the scene because one of the gunshots impaired the victim’s ability to speak. The victim’s level of certainty as to his identification of the defendant was very strong and was not affected by the passage of time between the crime and the confrontation; the victim knew the defendant personally and identified him without hesitation at the photographic lineup. He also testified unequivocally at trial that the defendant was the person who shot him on the evening of August 20, 2007.
By convicting the defendant, the jury in this case found the victim’s testimony credible. Applying the five-factor test of Manson v. Brathwaite, supra, the victim’s identification was established to be reliable. The State presented sufficient evidence to prove that the defendant shot the victim five times with the specific intent to kill. Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found that all of the elements of attempted second degree murder were proven beyond a reasonable doubt, and that the State negated any reasonable probability of misidentification.
For the reasons stated above, we affirm the defendant’s conviction and sentence.
AFFIRMED

. The State filed a multiple bill of information against the defendant, charging him as a third offender. However, as of the date that this appeal was lodged, no hearing had been held on the multiple bill.

. Detective Butler could not remember the name of the ATF agent, and the agent did not testify at trial. The victim referred to the ATF agent as Officer McGregor in his testimony.