STATE OF LOUISIANA      *      NO. 2024-KA-0413

VERSUS      *

JAMEL M. CLARK      *      COURT OF APPEAL

     *      FOURLH CIRCUIT

     STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 552-500, SECTION "E"
Judge Rhonda Goode-Douglas,
\* \* \* \* \* \*
**Judge Rachael D. Johnson**
\* \* \* \* \* \*
(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet,
Judge Rachael D. Johnson)

Holli Herrle-Castillo
LOUISIANA APPELLATE PROJECT
P. O. Box 2333
Marrero, LA 70073-2333

COUNSEL FOR DEFENDANT/APPELLANT

Jason Rogers Williams
DISTRICT ATTORNEY
Brad Scott
Chief of Appeals
Carley Greenfield
ORLEANS PARISH
619 S. White Street
New Orleans, LA 70119

COUNSEL FOR STATE/APPELLEE

**AFFIRMED**
**May 7, 2025**

RDJ
RLB
RML

Defendant, Jamel M. Clark ("Defendant"), appeals his battery upon a dating partner in the presence of a minor and attempted manslaughter convictions. Defendant asks this Court to reverse these convictions as the State of Louisiana (the "State") failed to provide sufficient evidence to show that a battery took place and that Defendant was the perpetrator of the crimes alleged. After reviewing the record, we affirm Defendant's convictions.

## FACTS AND PROCEDURAL HISTORY

On or around January 2021, Defendant and K.C.[1] began a romantic relationship after having a child together on November 8, 2020. Their romantic relationship ended on March or April of 2021. K.C. testified that prior, during, and after her romantic relationship with Defendant, they had three violent altercations. The altercations took place on August 31, 2020; November 19, 2020; and June 7, 2021. As no conviction arose from the August 31, 2020 altercation, we will only discuss the November 19, 2020 and June 7, 2021 altercations.

K.C. testified that on November 19, 2020, she and Defendant had an argument that escalated into a physical altercation. K.C. admitted that during this

_____

[1]Though the victim, K.C., was not a minor at the time of the incidents at issue, both Defendant's brief and the State's brief identify her via her initials. Adopting the format in both briefs, the victim will be referred to by her initials.

1

argument, she flipped over a table with Defendant's food on it. As a result, a fork flew from the tray and cut Defendant's eye. K.C. then picked up their ten-day old child, B.C., and walked down the hallway away from Defendant. Defendant followed K.C. and forced her to turn around by grabbing her from the back of the neck. Defendant then started choking K.C. while she was holding their child. At some point while Defendant was choking her, he loosened his grip, and K.C. was able to state "you're gonna kill me." After Defendant let go of her neck, K.C. left the house with B.C. to call 911 and report what happened.

K.C. then testified that on June 7, 2021, she and Defendant had an argument while on a telephone call. During the call, K.C. asked Defendant to "pick up" B.C. from her residence. Defendant arrived to pick up B.C. in the afternoon. Upon arrival, Defendant grabbed B.C. out of her walker and proceeded to walk out the door without B.C.'s car seat and belongings. After Defendant strapped B.C. in the car, K.C. and her friends ran outside the house to stop Defendant from taking B.C. K.C. climbed on top of the hood of Defendant's car in order to prevent him from leaving without B.C.'s belongings. Defendant proceeded to drive away while K.C. was on the hood of his car. K.C. held onto the roof of the car while Defendant drove approximately two blocks down the street. Defendant then stopped the car and attempted to pull K.C. off the roof. After failing to get K.C. off the car, Defendant reentered the car and drove towards a palm tree. Defendant successfully rammed K.C. into the palm tree multiple times, but she continued to hold onto the car. Defendant proceeded to speed down the street, run two stop signs, and then slammed on the brakes, resulting in K.C. falling off the car. Defendant then ran over K.C. twice. K.C. attempted to stand after being run over, but realized she could not move. As a result, K.C. sustained injuries to her kidney, ribs, vertebrae,

2

shoulder, head, spinal cord, and stomach. She was put on a respirator, unable to speak for two to three days after waking from a coma, and was unable to walk unassisted for a year. After waking from the coma, K.C. was able to identify a photo of the Defendant as her assailant and confirmed that he drove the car that ran her over twice.

On August 26, 2021, Defendant was charged by bill of information with the following: (1) one count of unauthorized use of a movable in violation of La. R.S. 14:68; (2) one count of battery upon a dating partner while the victim was pregnant in violation of La. R.S. 14:34.9(K); (3) one count of battery upon a dating partner involving strangulation in violation of La. R.S. 14:34.9(L); (4) two counts of battery upon a dating partner in the presence of a minor in violation of La. R.S. 14:34.9(I); and (5) one count of attempted second degree murder in violation of La. R.S. 14:27 and 30.1. Defendant pled not guilty to all charges. The district court conducted a three-day trial beginning on January 29, 2024. On January 31, 2024, the jury found Defendant guilty of the responsive verdict of attempted manslaughter, battery upon a dating partner, and both counts of battery of a dating partner with a child present. Defendant was sentenced to ten years for one count of attempted manslaughter, three years per count for two counts of battery of a dating partner with a child present, and six months for battery of a dating partner, all to run concurrently. This timely appeal followed.

Defendant's sole assignment of error is that there was insufficient evidence presented at trial to uphold the convictions for the November 19, 2020 battery upon a dating partner in the presence of a minor and the June 7, 2021 battery upon a dating partner in the presence of a minor and attempted manslaughter.

3

Pursuant to La. C.C.P. art. 920, appellate courts have a duty to review all appeals for errors patent on the face of the record. After a review of the record, there are no errors patent discerned from the record in the case at issue.

**DISCUSSION**

*Insufficient Evidence*

Defendant argues that the State presented insufficient evidence to convict him of two counts of battery of a dating partner with a child present and attempted manslaughter. Specifically, Defendant argues that the State failed to prove Defendant was the perpetrator of the alleged crimes and that K.C. was not a credible witness. Defendant asserts that the State did not present credible testimony that he was the perpetrator of the crime on November 19, 2020, and failed to present physical evidence that a battery was committed. Defendant argues that the conviction was solely based on K.C.'s unreliable testimony. He alleges that a reasonable jury would find K.C. unreliable because she denied prior negative statements she made until presented with recorded or written proof confirming otherwise. Further, he asserts that no physical evidence or credible witnesses were presented at trial to show that a battery was committed upon K.C. Defendant also claims that a reasonable jury would not determine that he committed battery of a dating partner with a child present because K.C. was an unreliable witness.

Defendant then argues that the State failed to prove Defendant was the perpetrator of the battery of a dating partner in the presence of a child and attempted manslaughter. Once again, Defendant relies on the argument that K.C. was an unreliable witness. Defendant alleges that there was conflicting testimony of who brought K.C. to the hospital after she was run over by a car on June 7, 2021. K.C. testified that her friends drove her to the hospital after Defendant ran

4

her over. However, Molly Henderson ("Ms. Henderson"), an independent witness, testified that the same car that ran K.C. over, drove her to the hospital. Defendant asserts that no reasonable jury could find K.C. credible because of the conflicting testimony from K.C. and Ms. Henderson, coupled with K.C.'s inconsistent testimony regarding the November 19, 2020 incident. After review of the law and record, we find both arguments are without merit.

La. R.S. 14:34.9(A) defines battery of a dating partner as "the intentional use of force or violence committed by one dating partner upon the person of another dating partner." Further, subsection (I) states that if a minor child under thirteen years old or younger was present at the scene at the time of the commission of the offense, the offender, "shall be imprisoned at hard labor for not more than three years." La. R.S. 14:34.9(I).

As stated earlier, Defendant was charged with attempted second-degree murder but was convicted of the responsive verdict of attempted manslaughter. La. R.S. 14:30.1(A)(1) defines second degree murder as the killing of a human being "[w]hen the offender has the specific intent to kill or inflict great bodily harm." La. R.S. 14:31 defines manslaughter as "[a] homicide which would be murder under … Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." An attempt occurs when "[a]ny person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object…." La. R.S. 14:27(A). "Although the statute for the completed crime of second degree murder allows for a conviction based on 'specific intent to kill or to inflict great bodily harm,' … attempted second degree murder requires specific intent to kill."

5

*State v. Bishop*, 01-2548, p. 4 (La. 1/14/03), 835 So. 2d 434, 437 (citing *State v. Huizar*, 414 So. 2d 741 (La. 1982)). "Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant." *Id.* (citing La. R.S. 14:10(1); *State v. Butler*, 322 So. 2d 189 (La. 1975); *State v. Martin*, 92-0811 (La. App. 5 Cir. 5/31/94), 638 So. 2d 411).

When reviewing a claim of insufficient evidence, we rely on *Jackson v. Virginia*, which states that the evidence, viewed in the light most favorable to the prosecution, must "convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." 443 U.S. 307, 316, 99 S.Ct. 2781, 2787, 61 L. Ed. 2d 560 (1979). This standard gives the trier of fact full responsibility to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* at 319, 99 S.Ct. at 2789. Accordingly, "the rational credibility determinations of the trier of fact are not to be second guessed by a reviewing court." *State v. Williams*, 11-0414, p. 18 (La. App. 4 Cir. 2/29/12), 85 So. 3d 759, 771 (citing *State v. Juluke*, 98-341, p. 4 (La. 1/8/99), 725 So. 2d 1291, 1293). A factfinder's credibility determination should only be disturbed if it is clearly contrary to the evidence. *State v. Wells*, 10-1338, p. 5 (La. App. 4 Cir. 3/30/11), 64 So. 3d 303, 306 (citations omitted). "When the key issue is the defendant's identity as the perpetrator, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentification." *State v. Duncan*, 11-0563, p. 10 (La. App. 4 Cir. 5/2/12), 91 So. 3d 504, 512 (citing *State v. Neal*, 00-0674, p. 11 (La. 6/29/01), 796 So. 2d 649, 658; *State v. Weary*, 2003–3067, p. 18 (La. 4/24/06), 931 So.2d 297, 311.) A positive identification by a witness is sufficient to support a conviction. *Neal*, 00-

6

0674, p. 11, 796 So. 2d at 658 (citing *State v. Ford*, 28,724 (La. App. 2d Cir. 10/30/96), 682, So. 2d 847, 849-50).

The State provided sufficient evidence that Defendant committed battery on K.C. with a child present on November 19, 2020. Further, there was physical evidence that the battery was committed on that date. The State presented testimony from K.C. and Officer Sean-Michael Carolan ("Officer Carolan") at trial. Officer Carolan testified that he responded to the domestic violence strangulation case that day. When he arrived at K.C.'s residence, he observed that she had "redness, discoloration, [and] some scratches" to the side of her neck. Officer Carolan could not identify Defendant as the person who caused K.C.'s injury because he had fled the scene before Officer Carolan arrived. However, K.C. identified Defendant as the person who committed the battery in the presence of their baby. Even though Defendant argues that no rational juror could find K.C. credible, there is no evidence that clearly contradicts the jury's credibility determination. Therefore, we will not second guess the jury's credibility determination. The jury determined that K.C. was credible when she positively identified Defendant as the perpetrator and this is sufficient to support the conviction. As such, we find that the State provided sufficient evidence that Defendant committed battery of a dating partner with a child present on November 19, 2020.

The State also provided sufficient evidence that Defendant was the perpetrator of the battery on K.C. in the presence of a child and attempted manslaughter on July 7, 2021. Defendant does not dispute that K.C. was forcefully thrown from the top of a vehicle and that same vehicle ran her over twice. However, he contends that there is no evidence that he was the driver of the

7

vehicle. Defendant alleges that Ms. Henderson and K.C. presented conflicting testimony as to how K.C. arrived at the hospital, thus making K.C. an unreliable witness. However, Ms. Henderson's testimony corroborates K.C.'s version of events as it pertains to the crimes alleged. Ms. Henderson and K.C. both testified that (1) K.C. was on top of a vehicle, (2) the vehicle was jerking violently in attempt to dislodge K.C., (3) K.C. flew off the vehicle because of the car's movements, and (4) the same vehicle K.C. was thrown from ran over her twice. Whoever drove K.C. to the hospital after this incident is irrelevant in determining whether the alleged crimes were committed.

K.C. identifying Defendant as the perpetrator of the crimes alleged is germane to the issue before us. K.C.'s testimony of Defendant running her over was corroborated by Detective Jeffrey Crouch's ("Detective Crouch") testimony. Detective Crouch testified that while K.C. was in the hospital, she was able to immediately and positively identify a picture of Defendant as the "person responsible for this incident" once she awakened from a coma.[2] K.C. identified Defendant as the perpetrator shortly after the incident and during trial. Once again, there is no reason to second guess the factfinder's credibility determination and there is no evidence that clearly contradicts the jury's determination. K.C.'s positive identification of Defendant is sufficient to support the conviction. Considering all of the above, we find that a reasonable juror could determine that Defendant was the driver of the car that forcefully ejected K.C. from the top of the vehicle and proceeded to run her over twice. As such, we find that the State

---

[2] Detective Crouch conducted a single photograph identification procedure for this case. He was able to do so because the victim (K.C.) knew the alleged perpetrator (Defendant) for more than six months, thus he was not required to present the victim with a six-person photographic array.

presented sufficient evidence to prove that Defendant committed battery on K.C. in the presence of a child and attempted manslaughter.

## DECREE

For the foregoing reasons, we affirm Defendant's convictions.

**AFFIRMED**