Jj_MICHAEL E. KIRBY, Judge.
On April 2, 2002, Dayshawn Brown was charged by bill of information with attempted second degree murder, a violation of La. R.S. 14:27(30.1), and with armed robbery, a violation of La. R.S. 14:64. On April 12th at his arraignment, he entered a plea of not guilty. After a hearing on May 13th the trial court found probable cause to bind the defendant over for trial and denied the motion to suppress the evidence. The State filed motions noticing its intent to invoke the firearm sentencing provisions and the hate crimes provision. On October 23rd a twelve-member jury found the defendant to be guilty of the responsive verdict of aggravated battery and not guilty as to the armed robbery charge. He was sentenced on November 22nd to serve ten years at hard labor without benefit of probation, parole, or suspension of sentence. The motion for reconsideration of sentence was denied, and the motion for an appeal was granted.
At trial Officer Roland Doucette, Sr. testified that he responded to a shooting in the Iberville Housing Development on September 11, 2001. The incident occurred in the rear driveway that encompasses the 1500 block of Bienville Street and the 200 block of Marais Street. About seventy-five people were in the area when the officer arrived, and he saw there a man who had suffered several gunshot | ¿wounds but was still conscious and stretched out on the ground. The wounded man told the officer that three people jumped him and robbed him of $100, and that he did not know who shot him. Officer Doucette observed a purse, a red cup, a red shirt, and a blue bandanna on the ground. While looking for witnesses, the officer noted a woman in a window whom he recognized from his work in the area, and he spoke with her. Later he received information via a series of phone calls which enabled him to develop suspects in the case. The first anonymous caller named the defendant as the person who fired the gun and also said that two other men were with him. A second caller said that a man named “Ears” and another named “Mike” as well as a third man were involved in the shooting. The officer knew “Ears” to be a man named Rickey Glover and “Mike” to be a younger person living in the 300 block of Marais Street. The description of the third man — as being about twenty-one years old and having a dark complexion, large bulging eyes, and short twisted braids — fit the defendant, Dayshawn Brown.[1] The officer then turned over the investigation to Detective Eskine; however, Officer Doucette was involved in the *667 arrest of the defendant. In October he went to the defendant’s apartment where he met Brown’s mother on the porch. The officer told her he wanted to speak to Dayshawn whom he observed in the living room. When she called to her son, he ran out the back door and was apprehended.
Detective Michael Eskine testified that he conducted the investigation into the shooting of David Baham, the victim. Officer Doucette gave him the names of three suspects, including Dayshawn Brown. The detective prepared two photographic line-ups which he showed to the victim. From one, Mr. Baham selected the photo of the defendant and named him as the man who shot him. |3 However, he did not select anyone from the line-up containing the picture of Ricky Glover. When interviewed, David Baham told the detective that he had gone to the area to purchase crack cocaine. He bought the drug from Dayshawn Brown who then pulled out a gun and shot him. There was a struggle for the gun, and it fell to the ground. Someone yelled, “Finish him,” and he was shot a second time. Several residents of the complex screamed that they were calling the police, and three men fled. David Baham told the detective that he knew the other two men as Dale and Oliver.
David Baham, who works on Bourbon Street, told the court that he went to the Iberville Development to purchase cocaine about 9 a.m. on September 11, 2001. As Baham was buying the drug from a man named Mike, he noticed the defendant standing nearby with two other men. Ba-ham walked toward his jeep and Day-shawn Brown walked toward him; when they got close to each other, Baham said to Brown, “Don’t I know you?”, and Brown answered, “No, Bitch, you don’t know me,” and began shooting. Baham tried to get the gun and they struggled. Baham grabbed the red shirt Brown was wearing and tugged at it until Brown pulled it over his head to free himself. Brown and the other two men began kicking Baham in the face. They also went through his pockets and his purse and took about $400. Ba-ham said he recognized the defendant because they had “dated.” He also said he used cocaine anytime he felt like partying, but he did not use it every day. David Baham admitted he had a prior conviction for solicitation for a crime against nature. Sometime after the shooting, the defendant’s sister called David Baham and offered to pay him if he did not come to court to testify against her brother.
|4Pr. Ami Raafat, an expert in trauma surgery, testified that she was working at Charity Hospital on September 11, 2001, when the victim came in with multiple gunshot wounds. He was immediately taken to the operating room where he was treated for a collapsed lung; also his spleen was removed, and his diaphragm repaired. The doctor reported that David Baham had six gunshot wounds: two on the front of his left arm, one in his left upper abdomen, one in his left upper back, another mid-back, another in his right buttock, and one in his right knee. When asked if any of his injuries were life-threatening, she replied that if his spleen had not been removed, David Baham would have bled to death, and if the two holes in his diaphragm had not been repaired, he would have suffered many complications.
Dionne Brown, the defendant’s sister, testified that her brother left school in the sixth grade and that he was a very poor student. When Ms Brown was asked if she knew anything about a “rock-rental” between her brother and the victim about a month prior to the shooting, she answered that one day her brother and his friend, Tyrell, drove up in a Jeep they had *668 rented from David Baham.[2] Later, Ba-ham called her house and told Dionne that her brother had not returned the Jeep. Dionne became aware that Baham had been shot after she saw a fight in the courtyard and then heard shots. She went to the scene and saw that it was “Bashia,” the name David Baham was called by the defendant. Dionne claimed that her brother, Dayshawn, was on the porch with her when the crime occurred and that two men named Tyronne and Tyrell were seen with the gun. (Tyrell was also involved in the “rock-rental” of the Jeep). Some time after the shooting when Dayshawn was in jail, Dionne called David Baham to tell him that her brother had been charged with attempted second degree murder, and at the same time, her brother called from jail. She was able to connect the calls to have a three-way conversation. She reported that David Baham was surprised to find that Dayshawn had |5been charged and that he promised to go to the D.A.’s office the next day to drop the charges. Dionne told of another three-way conversation between herself, her father and David Ba-ham in which Baham again stated that Dayshawn had not shot him.
Mr. William Massey, the defendant’s father, corroborated the testimony of his daughter, Dionne, as to the conversation with the victim and the victim’s statement that the defendant had not shot him.
A review of the record reveals no errors patent.
The defendant through counsel makes two assignments of error: (1) the trial court erred in sentencing the defendant without benefit of parole for the entirety of his ten-year sentence, and (2) the sentence is excessive.
Dayshawn Brown was sentenced under La.C.Cr.P. art. 893.3(D), the firearms statute which provides:
D. If the court finds by clear and convincing evidence that a firearm was actually used or discharged by the defendant during the commission of the felony for which he was convicted, and thereby caused bodily injury, the court shall impose a term of imprisonment of fifteen years; however, if the maximum sentence for the underlying felony is less than fifteen years, the court shall impose the maximum sentence.
At the sentencing hearing on November 22, 2002, the trial court stated:
I am convinced that you did fire your weapon and you did strike the victim in this matter with the weapon.And I want to let you know that I’ve taken that into consideration. [The court read aloud section “D” of La.C.Cr.P. art. 893.3]. In this case the maximum sentence for aggravated battery is ten years. So the court has no | fiother alternative but to impose a sentence of 10 years in the Department of Corrections.
The defense attorney then addressed the parole issue. He argued that under Paragraph “G” of La.C.Cr.P. art. 893.3, parole should be restricted for only the term of the minimum sentence. The trial court disagreed and imposed the entire sentence without benefit of parole.
The defendant now argues that under La. R.S. 14:34 there is no minimum sentence; the statute provides for a fine of not more than $5000 and imprisonment with or without hard labor for not more than ten years or both. The defendant would read La. R.S. 14:34 with La.C.Cr.P. art. 893.3(G) which provides:
*669 A defendant sentenced under the provisions of this Article shall not be eligible for parole during the period of the mandatory minimum sentence.
Because there is no mandatory minimum sentence under La. R.S. 14:34, a defendant so convicted should not be denied parole eligibility according to the defendant’s reading of the law.
However, as the State points out, the language of La.C.Cr.P. art. 893.3(G) explicitly states that anyone “sentenced under the provisions of this Article” is not eligible for parole during the period of the mandatory minimum sentence. Under section D of La.C.Cr.P. art. 893.3, which applies to cases where the offender uses a firearm in the commission of a felony and causes bodily injury, the term of imprisonment is fifteen years unless the “maximum sentence for the underlying felony is less than fifteen years” as it is for aggravated battery; under these circumstances the court must impose the maximum sentence of the underlying felony. The maximum term under La. R.S. 14:34 is ten years, and La.C.Cr.P. art. 893.3(G) unambiguously prohibits parole for that period.
^Furthermore, in three recent cases where defendants were sentenced under La.C.Cr.P. art. 893.3, the article was treated as an enhancement statute and parole was governed by that article and not the underlying statute.[3] In State v. Lee, 2002-1793 (La.App. 4 Cir. 4/2/03), 844 So.2d 970, this Court considered a case in which the defendant was sentenced under La.C.Cr.P. art. 893.3(A) which provides that after a finding by clear and convincing evidence that a defendant possessed a firearm during the commission of a felony, the court should impose a sentence of two years, but if the maximum sentence for the underlying offense is less than two years, the court shall impose the maximum sentence. The defendant in Lee was convicted of five counts of forcible rape and three counts of second degree kidnapping. He was sentenced on each of the counts under the appropriate statute and then he was sentenced to serve an additional two years under La.C.Cr.P. art. 893.3(A) for possessing a firearm during the commission of the crimes. This Court, finding the additional two-year sentence illegal, explained the purpose and history of the firearms statute:
La.C.Cr.P. art. 893.3 is nothing more than a sentencing enhancement statute that provides for the imposition of a mandatory minimum sentence for an offense for which the defendant has been convicted beyond a reasonable doubt, with such sentence not exceeding the maximum statutory sentence for that offense ....
The original firearms sentencing provision was added to the Code of Criminal Procedure by Acts 1981, No. 139, § 1. It provided:
When the court makes a finding that a firearm was used in the commission of a felony and when suspension of sentence is not otherwise prohibited, the court shall impose a sentence which is not less than:
Is (1) The maximum sentence provided by law, in the same manner as provided in the offense, if the maximum sentence is less than five years, or
(2) Five years, in the same manner as provided in the offense, if the maximum sentence is five years or more.
Imposition or execution of sentence shall not be suspended and the *670 offender shall not be eligible for probation or parole.
This statute clearly provided for the imposition of a mandatory minimum sentence for the use of a firearm in the commission of a felony, not for the imposition of a separate sentence in addition to the sentence for the crime for which the defendant was convicted. La.C.Cr.P. art. 893.1 was amended and reenacted by Acts 1988, No. 319, § 1 to enact La.C.Cr.P. arts. 893.2, 893.3 and 893.4 “to provide for the imposition of minimum mandatory sentences in certain cases.” La. C.Cr.P. art. 893.1 now simply sets forth the procedure the State follows if it intends to move for imposition of a mandatory minimum sentence under La.C.Cr.P. art. 893.3. There was no legislative intent expressed to change the existing law from merely providing for mandatory minimum sentences to providing for separate sentences in addition to the ones imposed for the crimes for which the defendant has been convicted.
That La.C.Cr.P. art. 893.3 merely provides for a mandatory minimum sentence is also evident by a reading of the language in the statutory scheme itself. La.C.Cr.P. art. 893.2 refers three times to “the mandatory minimum sentencing provisions of Article 893.3.” La.C.Cr.P. art. 893.3(G) states that “[a] defendant sentenced under the provisions of this Article shall not be eligible for parole during the period of the mandatory minimum sentence.” These references make it clear that the enhanced sentences pro-; vided by La.C.Cr.P. art. 893.3 are simply mandatory minimum sentences for the crimes for which the defendant has been convicted.
State v. Lee, 2002-1793, pp. 47-49, 844 So.2d 970, 999-1000.
In State v. West, 2001-0969 (La.App. 3 Cir. 12/12/01), 801 So.2d 619, a case similar to the instant case in that the defendant was convicted of aggravated 1gbattery and appealed his ten-year sentence imposed without benefit of parole, probation, or suspension of sentence under La.C.Cr.P. art. 893.3(D), (F)[4], and (G); the Third Circuit, after finding the sentence was not excessive, affirmed the ten-year term without benefits. Also, in State v. Taylor, 34,823 (La.App. 2 Cir. 7/11/01), 793 So.2d 367, remanded for resentencing, 35,921 (La.App. 2 Cir. 4/3/02), 813 So.2d 1151, a defendant convicted of manslaughter was initially sentenced to twenty-six years at hard labor with the first twenty years without benefit of parole under La.C.Cr.P. art. 893.3; however, on remand, the Second Circuit reduced the defendant’s term to twenty-two years without benefit of parole for the first five years under La. C.Cr.P. art. 893.3(C) as it existed in 1997 when the crime occurred. In these cases the eligibility for parole was governed by the firearms statute rather than the underlying statute.
In the case at bar, we find that the defendant’s sentence, which the trial court emphatically stated was imposed under the firearm sentencing provisions and was the mandatory minimum term of ten years, is governed by Section G of La.C.Cr.P. art. 893.3 which prohibits parole.
There is no merit in this assignment of error.
*671 In his second assignment of error, the defendant argues that his sentence is excessive.
Article I, Section 20 of the Louisiana Constitution of 1974 provides that “[n]o law shall subject any person ... to cruel, excessive or unusual punishment.” A sentence, although within the statutory limits, is constitutionally excessive if it is “grossly out of proportion to the severity of the crime” or is “nothing more than the | ^purposeless and needless imposition of pain and suffering.” State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. State v. Brady, 97-1095 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264.
Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La.C.Cr.P. art. 894.1 and whether the sentence is warranted in light of the particular circumstances of the case. State v. Black, 98-0457, p. 8 (La.App. 4 Cir. 3/22/00), 757 So.2d 887, 892. If adequate compliance with Article 894.1 is found, the reviewing court must determine whether the sentence imposed is too severe in light of the particular defendant and the circumstances of his case. State v. Caston, 477 So.2d at 871. The reviewing court must also keep in mind that maximum sentences should be reserved for the most egregious violators of the offense so charged. State v. Quebedeaux, 424 So.2d 1009, 1014 (La.1982).
The trial court has great discretion in sentencing within the statutory limits. State v. Trahan, 425 So.2d 1222 (La.1983). The reviewing court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. La. C.Cr.P. art. 881.4(D).
The defendant argues that he does not deserve the maximum sentence for aggravated battery. He suggests that when the jury found him not guilty of the charge of armed robbery, it must have reasoned that he attacked the victim for some reason other than robbery, and he further proposes that the homosexual victim provoked the attack by taunting him and suggesting that they had a relationship.
|T1We find the record in this case supports the defendant’s sentence. The defendant can offer no justification for shooting the victim several times and inflicting life-threatening injuries. Certainly the fact that the victim was homosexual and indicated he knew the defendant provided no reasonable provocation for the attack. The ten-year sentence is the mandatory term. In light of the seriousness of the crime, the trial court did not abuse its discretion.
This assignment is without merit.
Accordingly, for reasons cited above, the defendant’s conviction and sentence are affirmed.
AFFIRMED.

. In cross-examination the officer testified that the defendant was actually only seventeen at the time of the incident.

. According to Dionne Brown, David Baham rented the Jeep to Dayshawn Brown and Ty-rell in return for rock cocaine.

. In none of the cases was eligibility for parole an issue.

. La.C.Cr.P. art. 893.3(F) provides:
A sentence imposed under the provisions of this Article shall not be suspended....