Judge Terri F. Love
This appeal arises from defendant's manslaughter conviction. The defendant appeals as to the insufficiency of the State's evidence to refute his self-defense argument. The defendant also contends the trial court abused its judicial discretion by denying his motion to visit the crime scene and violating his right to present a defense by limiting the number of crime scene photos presented to the jury.
We find the evidence sufficiently supported the defendant's conviction. The trial court did not abuse its discretion by denying the motion to visit the crime scene and did not violate the defendant's right to present a defense, as cumulative evidence was presented. Accordingly, the defendant's conviction is affirmed. However, having discerned an error in the defendant's sentence, we remand the matter for resentencing in accordance with La. C.Cr.P. art. 893.3(E)(1)(a) and La. C.Cr.P. art. 893.3(E)(2).
FACTUAL BACKGROUND
On November 13, 2014, Bradley Parvez heard someone outside his door that he believed to be the mailman. Mr. Parvez continued to hear noises as if someone was walking from the back door to the front door using the alley alongside the house. Mr. Parvez went to the front door and observed Timothy Rainwater allegedly attempting to steal a bicycle. Mr. Parvez shot and killed Mr. Rainwater.
PROCEDURAL HISTORY
The State indicted Mr. Parvez for the second degree murder of Mr. Rainwater. Mr. Parvez pled not guilty. The State filed a Motion to Invoke Firearm Sentencing Provision pursuant to La. C.Cr.P. art. 893.3. Following a four-day jury trial, the jury rendered a verdict of guilty of the crime of manslaughter. Counsel for Mr. Parvez filed a Motion for New Trial, which the trial court denied. Mr. Parvez was sentenced to twenty-five years at hard labor, without benefit of parole, probation or suspension of sentence for twenty years of the sentence. Mr. Parvez's Motion for Out-of-Time appeal was granted.
Mr. Parvez contends there was insufficient evidence to support his conviction, *106 that the trial court abused its discretion by denying his request for the jury to visit the crime scene, and prevented him from presenting a defense by limiting the number of crime scene photographs presented to the jury.
TESTIMONY AND EVIDENCE
New Orleans Police Department ("NOPD") 911 operator Sehara Webb identified the incident recall printout of the 911 call related to this case and the audio recording of that 911 call. The 911 recording was played for the jury.
The 911 call begins with Mr. Parvez stating he shot Mr. Rainwater, who was trying to steal his bicycle. Mr. Parvez then says he had to shoot Mr. Rainwater because he grabbed for Mr. Parvez's gun. Next, Mr. Parvez gives the 911 operator his address and says that the victim is a black male and is deceased. Mr. Parvez proceeds to recite a clothing description of Mr. Rainwater and once again states Mr. Rainwater grabbed for Mr. Parvez's gun. Mr. Parvez identifies himself by name, gives his address, and says he shot Mr. Rainwater three times. Mr. Parvez tells the operator to send help quickly so Mr. Rainwater can be saved.
Christopher Ronning, who lived across the street from Mr. Parvez's residence, heard four gunshots at about 10:00 a.m. on November 13, 2014. Mr. Ronning looked out his front door and viewed Mr. Parvez standing in his front doorway. Mr. Ronning did not witness the actual shooting, but noticed that Mr. Parvez's glass storm door was shattered, and that a body was on the ground in Mr. Parvez's front yard. Mr. Ronning could see Mr. Parvez was agitated, and heard him voice a racial epithet toward Mr. Rainwater.
Lieutenant Nicholas Gernon testified that Detective Wayne DeLarge was the lead detective on the case and was one of the first officers to arrive on the scene. However, as Mr. Parvez had already been taken into custody, Detective DeLarge relocated to police headquarters with Mr. Parvez.
When Lieutenant Gernon arrived on the scene, he observed the glass storm door at Mr. Parvez's 1932 Fern Street residence was shattered and Mr. Rainwater's body lying on the ground in the front yard. Lieutenant Gernon walked the scene and found six spent bullet cartridges, a pair of work gloves, a pair of pliers on the front steps, and a chain securing a bicycle to the iron railing on the front steps. Lieutenant Gernon noted that an attempt had been made to cut a link in the chain.
Reviewing the evidence found at the scene, Lieutenant Gernon opined that the glass storm door was shattered by a bullet fired from inside of the residence. Lieutenant Gernon stated that the work gloves and pair of pliers found on the steps next to Mr. Parvez's bicycle suggested that Mr. Rainwater was shot as he was attempting to steal Mr. Parvez's bicycle. In addition, Lieutenant Gernon recalled that the position of the shell casings indicated Mr. Parvez was walking toward Mr. Rainwater, in a pursuing manner, as he fired.[1] Mr. Rainwater's wounds -one in the back, another in the back of the head and a third to his right hand-supported Lieutenant Gernon's conclusion that Mr. Rainwater was fleeing when he was shot. NOPD officers canvassed the neighborhood, but did not locate anyone who witnessed the shooting.
*107 While investigating Mr. Parvez, Lieutenant Gernon discovered that Mr. Parvez received NOPD training in 2005, and worked for the Sheriff's Office until 2006, when he resigned to take a job with the Tulane University Police Department.
Lieutenant Gernon's testimony refuted Mr. Parvez's allegation that Mr. Rainwater's attempt to enter Mr. Parvez's house and grab the gun, caused the shooting by jamming Mr. Parvez's hand between the exterior storm door and door frame, causing the gun to fire during the ensuing scuffle. Lieutenant Gernon said the absence of Mr. Rainwater's DNA on the handle of the storm door contradicted Mr. Parvez's claim that Mr. Rainwater tried to open the storm door to enter the residence. Moreover, Lieutenant Gernon noted that the position of the shell casings supported the State's theory that Mr. Parvez fired as he was approaching Mr. Rainwater, not standing still, as claimed. Lieutenant Gernon said that if Mr. Parvez had been stationary while firing, the shell casings would have pooled in one spot rather than fanning out across the front yard.
Orleans Parish Coroner's Office forensic pathologist Dr. Cynthia Gardner conducted the autopsy on Mr. Rainwater. As a result of Dr. Gardner's findings, the Orleans Parish Coroner classified Mr. Rainwater's death a homicide from multiple gunshot wounds. Dr. Gardner narrated her autopsy findings on a body diagram, identifying a gunshot wound to Mr. Rainwater's back between his shoulder blades, one to the little finger of his right hand, which she described as a close range/defensive wound based on the presence of soot, and finally, one shot, the fatal injury, to the back of Mr. Rainwater's head.
NOPD Crime Laboratory firearms identification expert, Meredith Acosta, tested six spent bullet casings retrieved at the shooting scene. She learned the casings were fired by the weapon seized from Mr. Parvez the day of the shooting. Ms. Acosta corroborated Lieutenant Gernon's testimony that ballistics evidence and Mr. Rainwater's gunshot wounds to the back indicated that Mr. Parvez was pursuing Mr. Rainwater as he attempted to flee through the alley on the left side of the house. Ms. Acosta opined that had the shooter been standing still as he fired at Mr. Rainwater, the shell casings would have collected in one location rather than spreading from one side of the yard to the other.
DNA Forensic Analyst Elizabeth Hamilton tested blood samples obtained from the living room of Mr. Parvez's residence, neither of which contained Mr. Rainwater's DNA. Ms. Hamilton also confirmed that testing of the handle of the storm door was negative for the presence of Mr. Rainwater's DNA. The only objects that contained Mr. Rainwater's DNA were the handles of the pliers found on the scene.
Mr. Parvez recalled the events immediately preceding the shooting. He testified that while he was in the rear of the house, he heard the front yard gate open and the storm door at the entrance of his residence open and then close. He assumed the noises were made by the mailman delivering a package by placing it inside the storm door. Mr. Parvez then heard someone walking from the back yard to the front of the property via the alley on the left side of his residence. Mr. Parvez suspected someone was trying to enter his house. He walked to the front of his residence, and while doing so, armed himself with a gun. Mr. Parvez opened the interior wood front door and peered out into the yard, but he did not see anyone. He noticed that the storm door was slightly ajar at that time, so he moved the unlatched storm door slightly with his left hand, while holding his gun in his right hand. He took one step out of the house onto the front steps to *108 inspect the front yard. He did not see anyone and nothing in the front yard appeared disturbed. As he turned to re-enter his house, he saw Mr. Rainwater approaching him from the alley. Mr. Rainwater slammed the storm door against Mr. Parvez wedging Mr. Parvez's gun between the door and Mr. Rainwater's body. The force of the storm door hitting Mr. Parvez and the ensuing scuffle, during which Mr. Rainwater grabbed for Mr. Parvez's gun, caused the weapon to fire and dislodge the handle of the storm door. Mr. Parvez sensed that the glass in the storm door shattered, but he did not know what caused it to break. The gun fired six more times, with one bullet hitting Mr. Rainwater in his right hand. After that, Mr. Rainwater took five or six steps and then fell to the left of the house near the alley. Mr. Parez did not know Mr. Rainwater had been shot anywhere, other than in the hand. Mr. Parez claimed he fired the gun in self-defense and denied pursuing and shooting Mr. Rainwater.
During cross-examination, the State introduced six jailhouse phone calls were played for the jury placed by Mr. Parez, during which he allegedly spoke disparagingly about his girlfriend and stated that he would not be convicted of this crime.
ERRORS PATENT
A review for errors patent reveals one irregularity as to Mr. Parvez's sentence.
Mr. Parvez was charged with second degree murder, and the State invoked the firearm sentencing provision of La. C.Cr.P. art. 893.3(E). Mr. Parvez was convicted of manslaughter. The trial court sentenced him to serve twenty-five years at hard labor, specifying that the first twenty years of the sentence be served without the benefit of probation, parole or suspension of sentence.[2]
La. C.Cr.P. art. 893.3(E)(1)(a) provides:
Notwithstanding any other provision of law to the contrary, if the defendant commits a felony with a firearm as provided for in this Article, and the crime is considered a violent felony as defined in this Paragraph, the court shall impose a minimum term of imprisonment of ten years. In addition, if the firearm is discharged during the commission of such a violent felony, the court shall impose a minimum term of imprisonment of twenty years.
Further, La. C.Cr.P. art. 893.3(E)(2) provides that "[a] sentence imposed under this Paragraph shall be without benefit of parole, probation or suspension of sentence."
*109 By restricting only twenty years of the sentence without benefit of parole, probation or suspension of sentence, the trial court imposed an illegally lenient sentence. La. C.Cr.P. art. 893.3(E)(2) mandates that the entire sentence imposed be served without benefits. However, neither Mr. Parez nor the State objected to the sentence; and the State did not appeal the sentence or otherwise raise the issue in this Court.
In State v. Kelly , 15-0484, pp. 5-14 (La. 6/29/16), 195 So.3d 449, 452-58, the Louisiana Supreme Court addressed the extent to which appellate courts may correct illegally lenient sentences as patent errors. In Kelly, the defendant was convicted of molestation of a juvenile and sentenced to fifteen years at hard labor, without benefit of parole, probation or suspension of sentence, pursuant to La. R.S. 14:81.2(B)(2) relative to molestation of a victim between the ages of thirteen and seventeen. 15-0484, p. 2, 195 So.3d at 450. In Kelly, as in this case, the State did not object on the record to the sentence, nor did the State appeal or seek review of the sentence. 15-0484, p. 2, 195 So.3d at 451. The defendant appealed his conviction, which the Third Circuit affirmed; however, conducting errors patent review, the circuit court found the defendant's sentence illegally lenient, noting that the victim was under thirteen and La. R.S. 14:81.2(D)(1) provides a minimum sentence of twenty-five years. Id. , 15-0484, p. 2-3, 195 So.3d at 451. The majority found the fifteen-year sentence imposed by the district court illegally lenient and remanded for resentencing pursuant to La. R.S. 14:81.2(D)(1). Id. , 15-0484, p. 3, 195 So.3d at 451.
The defendant sought writs in the Supreme Court, which affirmed the conviction, but found that the Third Circuit exceeded the statutorily-imposed scope of errors patent review when finding the defendant's sentence illegally lenient. Id. , 15-0484,p. 14, 195 So.3d at 458. Accordingly, the Supreme Court reversed the Third Circuit ruling, which vacated the defendant's sentence, and remanded the matter to the district court for reinstatement of sentence, amending the sentence by removing the restrictions as to parole, probation or suspension of sentence. Id. The Supreme Court reasoned:
Louisiana courts have long screened appeals for patent error. See, e.g., State v. Behan, 20 La. Ann. 389 (1868). Currently, in accordance with La. C.Cr. P. art. 920, all appeals are routinely reviewed for errors patent on the face of the record. See, e.g., State v. Shaw, 12-686 (La. App. 5 Cir. 1/16/13), 108 So.3d 1189, 1197 ; State v. Celestine, 11-1403 (La. App. 3 Cir. 5/30/12), 91 So.3d 573, 575 ; State v. Bourda, 10-1553 (La. App. 3 Cir. 6/8/11), 70 So.3d 82, 83. La. C.Cr. P. art. 920 provides: "The following matters and no others shall be considered on appeal: (1) An error designated in the assignment of errors; and (2) An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence. " (Emphasis added). The substance of Article 920(2) was taken from former La. R.S. 15:503 which "defined an error 'patent on the face of the record.' " La. C.Cr. P. art. 920, 1966 Revision Comment (c) (as amended to conform to 1974 amendment). Former La. R.S. 15:503 provided: "An error is patent on the face of the record when it is discoverable by the mere inspection of the pleadings and proceedings and without any inspection of the evidence, though such evidence be in the record." In State v. Oliveaux, 312 So.2d 337, 339 (La.1975) this court explained the scope of review under La. C.Cr. P. art. 920(2) :
We have determined that the record in a criminal case includes the caption, the statement of time and place of *110 holding court, the indictment or information and the endorsement thereon, the arraignment, the plea of the accused, the mentioning of the impanelling of the jury, the verdict, and the judgment, State v. Palmer, 251 La. 759, 206 So.2d 485 (1968), State v. Sanford, 248 La. 630, 181 So.2d 50 (1965) ; the bill of particulars filed in connection with a short form indictment or information, State v. Picou, 236 La. 421, 107 So.2d 691 (1959) ; and, in capital cases, a minute entry indicating that the jury had been sequestered as required by La. C.Cr.P. Art. 791, State v. Hunter, 306 So.2d 710 (La.1975), State v. Luquette, 275 So.2d 396 (La.1973).
Kelly , 15-0484, p. 6, 195 So.3d at 453.
In this case, there is no need to exceed the bounds of an errors patent review as discussed in Kelly. Although neither of the parties raised the issue, this Court did not have to peruse the evidence to locate the error. An inspection of the sentence imposed, and a review of the statutory provision under which Mr. Parvez was sentenced reveals the error without the need to examine evidence in the case. Accordingly, we remand the matter for resentencing in accordance with La. C.Cr.P. art. 893.3(E)(1)(a) and La. C.Cr.P. art. 893.3(E)(2).
SUFFICIENCY OF THE EVIDENCE
Mr. Parvez contends the evidence was insufficient to support his conviction for manslaughter because the State failed to negate his claim of self-defense.
Pursuant to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), this Court " 'must determine that the evidence, viewed in the light most favorable to the prosecution, "was sufficient to convince a rational trier of fact that all the elements of the crime had been proved beyond a reasonable doubt.' " State v. Neal , 00-0674, p. 9 (La. 6/29/01), 796 So.2d 649, 657, quoting State v. Captville , 448 So.2d 676, 678 (La. 1984). A factfinder's decision concerning the credibility of a witness will not be "disturbed unless it is clearly contrary to the evidence." State v. Bernard, 14-0580, p. 11 (La. App. 4 Cir. 6/3/15), 171 So.3d 1063, 1073, quoting State v. James , 09-1188, p. 4 (La. App. 4 Cir. 2/24/10), 32 So.3d 993, 996. When the defendant challenges the sufficiency of the evidence in a homicide case urging self-defense, the State "has the burden of proving, beyond a reasonable doubt", that the homicide was not perpetrated in self-defense. State ex rel. D.P.B., 02-1742, p. 5 (La. 5/20/03), 846 So.2d 753, 756-57.
Mr. Parvez was charged with second-degree murder, which is defined as the killing of a human being when the offender has a specific intent to kill or inflict great bodily harm. La. R.S. 14:30.1. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). " 'Specific intent may be inferred from the circumstances surrounding the offense and the conduct of the defendant.' " State v. Davenport , 16-0223, p. 23 (La. App. 4 Cir. 10/18/17), --- So.3d ----, ----, 2017 WL 4700652, *43, quoting State v. Bishop , 01-2548, p. 4 (La. 1/14/03), 835 So.2d 434, 437 and State v. Caliste , 12-0533, p. 9 (La. App. 4 Cir. 9/4/13), 125 So.3d 8, 14. A defendant's act of aiming a lethal weapon and discharging it in the direction of his victim supports a finding by the trier of fact that the defendant acted with specific intent to kill. State v. Hoffman, 98-3118, p. 48 (La. 4/11/00), 768 So.2d 542, 585.
*111 While Mr. Parvez was charged with second degree murder, he was convicted of the responsive verdict of manslaughter-a homicide which would be second-degree murder "but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection." La. R.S. 14:31A(1). See also La. C.Cr.P. art. 814A(3). "Lesser and included grades of a charged offense are those in which all of the essential elements of the lesser offense are also essential elements of the greater offense charged." State v. Johnson , 01-0006, p. 4 (La. 5/31/02), 823 So.2d 917, 920. "Thus, evidence sufficient to support conviction of the greater offense will necessarily support conviction of the lesser and included offense." Id. " 'Sudden passion' and 'heat of blood' are not elements of the offense of manslaughter; rather, they are" mitigating factors lessening the culpability of a defendant. State v. Lombard, 486 So.2d 106, 110 (La. 1986). Conversely, a homicide or the intentional killing of a human being is justifiable "[w]hen committed in self-defense by one who reasonably believes that he is imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger." La. R.S. 14:20A(1).
In this case, the evidence demonstrated Mr. Parvez possessed the specific intent to kill Mr. Rainwater. In Mr. Parvez's 911 call, he told the operator that he shot Mr. Rainwater because Mr. Rainwater was attempting to steal his bicycle. The testimony of coroner Dr. Gardner suggested Mr. Rainwater was moving away from Mr. Parvez when he was shot. This was evidenced by the gunshot wounds to Mr. Rainwater's back between his shoulder blades and another in the rear of his head. The testimony offered by firearms examiner Ms. Acosta and Lieutenant Gernon documented that Mr. Parvez fired at Mr. Rainwater seven times. Further, those witnesses corroborated Dr. Gardner's opinion that Mr. Rainwater was fleeing when he was shot, based upon the position of spent bullet casings at the scene. Ms. Acosta and Lieutenant Gernon testified that if Mr. Parvez had been standing still while shooting at Mr. Rainwater, the bullet casings would have been located in one area. However, the bullet casings formed a trail from the steps of Mr. Parvez's residence to the place where Mr. Rainwater's body was found, exhibited by photographs of the crime scene. Thus, we find that the evidence herein was sufficient to support a conviction for second degree murder, and consequently, sufficient to support Mr. Parvez's conviction of manslaughter.
Regarding Mr. Parvez's claim of self-defense, the evidence supporting his contention that the shooting was justified was his own trial testimony, which was uncorroborated by the facts. Mr. Parvez reported to the police that he shot Mr. Rainwater to thwart the theft of his bicycle. Moreover, his trial testimony belies his thought that he was in fear of an imminent attack inside his residence: "At the time I saw [the victim], I had the feeling he was trying to disarm me, not burglarize me. He was trying to cause great bodily harm to me." However, there was no corroborating evidence that Mr. Parvez feared for his life. Mr. Parvez, as the evidence showed, was larger than Mr. Rainwater by no less than one hundred pounds and admitted that Mr. Rainwater was unarmed. In addition, the pattern of broken glass in the front of the house indicated Mr. Parvez shot from inside his residence rather than during a scuffle in the doorway. The evidence demonstrated that Mr. Rainwater died as a result of being shot in his back and the rear of his skull. In *112 State v. Ventry, 99-0302, p. 4 (La. App. 4 Cir. 6/14/00), 765 So.2d 1129, 1132, this Court rejected the defendant's self-defense claim in light of the fact that although the defendant claimed he shot the victim as the victim approached him, the victim was shot in the back. Viewing all the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Mr. Parvez did not shoot Mr. Rainwater in self-defense. Thus, the evidence sufficiently supported his conviction.
VIEWING THE SCENE
Mr. Parvez contends that the trial court abused its discretion by denying his motion to have the jurors view the crime scene.
"The grant or denial of a motion to have the trier of fact view the scene of the crime is within the discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." State v. Carney, 476 So.2d 364, 371 (La. App. 4th Cir. 1985).
In denying Mr. Parvez's motion, the trial judge reasoned:
Louisiana Code of Procedure, Article 762, Paragraph 2, Place of Sessions in Court allows for Court to be conducted out of the court house, under the Court's discretion, in certain circumstances, including for a Jury to view the place where the crime, or any material part thereof is alleged to have occurred, in this case the Codal Article leaves it up to the discretion of the Judge, in terms of the alleged offense, or the evidence, which cannot conveniently be brought into Court. As noted, the State has presented upwards of eighty-plus exhibits, including multiple photos of the crime scene, as well as blowup photos of the actual house in question, and the space in question. In addition, the State has presented the actual door, that's sort of been the subject matter of the circumstances surrounding how this all took place. And on numerous occasions throughout this trial, the last couple of days, it has been demonstrated, it's been discussed with various experts, as well as Mr. Parvez, himself, how this allegedly took place, based on the State's theory of their case, based on the Defense's theory of its defense. And so, the Court finds that the Jury has had ample enough information presented to them in Court to get an idea of what that scene, and what that space actually looks like. And so ... the Court finds that the evidence was actually brought into Court, and there were numerous demonstrations throughout the course of testimony by both the experts and Mr. Parvez
The jurors viewed fifty-four photos of the crime scene, two poster boards-one of the residence and the other a schematic diagram of the scene depicting location of evidence and plotting of distances wherein the shooting occurred-plus eight pictures of the interior of Mr. Parvez's residence. As the jurors viewed the photographs, Lieutenant Gernon explained what each depicted. Through his testimony, the jury was able to visualize the exterior of the residence, the front yard where the shooting occurred, and the spatial relationship between the storm door, the front yard, and the alignment of Mr. Rainwater's body vis-à-vis the steps leading into the residence. Considering the photographs and testimony, the trial court did not abuse its discretion by denying Mr. Parvez's Motion to View the Scene.
LIMITATION OF PHOTOGRAPHS
Mr. Parvez asserts he was denied his constitutional right to present a defense as a result of the trial court's refusal to allow him to introduce twenty-one photographs *113 of the crime scene in addition to the testimony of Mark Johnson, Mr. Parvez's landlord.
Prior to the start of the fourth day of trial, counsel for Mr. Parvez arranged for photographs to be taken of the crime scene. He moved to have the photos admitted at trial in addition to the proposed testimony of Mr. Johnson that he replaced the storm door with another identical to the original door and the measurements of the crime scene taken that morning. The State objected as to timeliness, but also noted that Mr. Parvez's mother appeared in the pictures "measuring distances" and that there were "actors"-one pretending to be Mr. Parvez and another posing as Mr. Rainwater-allegedly depicting the crime scene.
The trial court judge denied Mr. Parvez's request, noting:
the Court finds that these photos actually mirror the photos that have already been introduced into evidence, notwithstanding the fact that we now have people in certain placement, in the photos. And so, because of that reason, and because this information is only recently provided to the State, while we're one, in the middle of trial, and two, in the middle of testimony by Mr. Parvez, which had to end so abruptly last night, the Court is going to deny introduction of these photos at this time.
" 'Relevant' evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." State v. Farrier , 14-0623, p. 13 (La. App. 4 Cir. 3/25/15), 162 So.3d 1233, 1243. La. C.E. art. 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time." "A trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion." State v. Gray , 16-1195, p. 21 (La. App. 4 Cir. 6/28/17), --- So.3d ----, ----, 2017 WL 3426021, *11.
The trial court found the photographs cumulative to the testimony of Mr. Parvez and the State's witnesses, as well as the photographs already introduced by the State. The State filed its Motion for Discovery in accordance with La. C.Cr.P. art. 724 on February 1, 2016, prior to the start of trial; yet counsel for Mr. Parvez did not provide these photos to the State until the third day of trial.
"Louisiana's criminal discovery rules are intended to eliminate unwarranted prejudice arising from surprise testimony and evidence, to permit the defense to meet the state's case, and to allow a proper assessment of the strength of its evidence in preparing a defense." State v. Allen, 94-2262, p. 4 (La. 11/13/95), 663 So.2d 686, 688. There is nothing in the record to explain counsel for Mr. Parvez's failure to marshal, until the third day of trial, the evidence it wished to introduce. Nor was there a reason for having the "actors" and Mr. Parvez's mother stage the scene for the photos.
Finally, Mr. Parvez's right to present a defense was not violated by the trial court's refusal to allow the landlord, Mr. Johnson, to testify about the measurements he had taken of his property. The trial court restricted the introduction of the photographs, not Mr. Johnson's testimony. In fact, Mr. Johnson testified extensively about the exterior physical layout of the property, including measurement of distances between structural features of the property, via the photographs introduced by the State. As such, we find that *114 Mr. Parvez's right to present a defense was not violated.
DECREE
For the above-mentioned reasons, Mr. Parvez's conviction is affirmed. We remand the matter to the trial court for resentencing in accordance with La. C.Cr.P. art. 893.3(E)(1)(a) and La. C.Cr.P. art. 893.3(E)(2).
CONVICTION AFFIRMED; REMANDED FOR RESENTENCING
LOBRANO, J., CONCURS IN THE RESULT
JENKINS, J., CONCURS IN PART AND DISSENTS IN PART
JENKINS, J., CONCURS IN PART AND DISSENTS IN PART
I concur in the affirmation of defendant's conviction. I dissent, however, from the majority's conclusion that the district court imposed an illegally lenient sentence under La. C.Cr.P. art. 893.3(E). I find that the district court complied with the firearm sentence enhancement provisions of La. C.Cr.P. art. 893.3(E) by sentencing defendant to 25 years, of which 20 years shall be served without benefit of parole, probation, or suspension of sentence. The latter part of defendant's sentence meets the mandatory minimum requirements of La. C.Cr.P. art. 893.3(E)(1)(a) and (2).
" Article 893.3 merely provides for the imposition of a mandatory minimum sentence when a firearm is used in the commission of a felony." State v. Washington , 05-0431, p. 9 (La. App. 4 Cir. 12/7/05), 921 So.2d 139, 144. As this Court discussed in Washington , the repeated use in La. C.Cr.P. art. 893.3 of the phrase "mandatory minimum sentence" makes it clear that the enhanced sentences provided by that statute are simply mandatory minimum sentences for the crimes for which the defendant has been convicted. Id. ; see also , State v. Brown , 03-0732, pp. 7-8 (La. App. 4 Cir. 7/23/03), 853 So.2d 665, 669-70.
In this case, the district court sentenced defendant to 25 years in accordance with the sentencing statute of La. R.S. 14:31, the crime for which defendant was convicted. Then, in compliance with the firearm sentencing enhancement provisions of La. C.Cr.P. art. 893.3(E)(1)(a) and (2), the district court found that defendant discharged a firearm during the commission of a violent felony and imposed 20 years of defendant's sentence to be served without benefit of parole, probation, or suspension of sentence. While I note that the district court had the authority and discretion under La. C.Cr.P. 893.3(E) to impose the entire 25 year sentence without benefits, I find no error in the district court's sentencing of defendant in accordance with both the sentencing statute of La. R.S. 14:31 and the sentence enhancement provisions of La. C.Cr.P. art. 893.3(E)(1)(a) and (2). See State v. Taylor , 34,823, pp. 5-6 (La. App. 2 Cir. 7/11/01), 793 So.2d 367, 369-70 ; State v. King , 563 So.2d 449, 458 (La. App. 1st Cir. 1990). Accordingly, I would affirm defendant's conviction and sentence.

The first officers on the scene confiscated a fully loaded .9mm Glock Model 19 handgun from Mr. Parvez's residence.

When sentencing Mr. Parvez, the trial court impliedly found that the State demonstrated he discharged a firearm during the commission of a violent felony, stating:
Manslaughter generally carries a sentence of zero to 40 years. In this case, however, the State on January 1st of 2016, filed a firearm enhancement pursuant to Louisiana Code of Criminal Procedure 893.1. Under 893, 893.2 E, the State legislature has mandated as if a defendant commits a violent felony, i.e., in this case a manslaughter, with a firearm where in a firearm is discharged during the commission of such felony, the Court is required by the legislature to impose a minimum of at least 20 years imprisonment. That 20 years is without the benefit of parole, probation or suspension of sentence.
Accordingly, considering the mandatory minimum sentence required by the firearm enhancement and considering the jury's finding of manslaughter, this Court must consider a sentencing range of 20 years to 40 years.
* * *
The court sentences Mr. Parvez to 25 years to the Department of Public Safety and Corrections, 20 of those years are to be served without the benefit of parole, probation or suspension of sentence.