STATE OF LOUISIANA

VERSUS

CORY BARTHOLOMEW

NO. 18-KA-670

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA


ON APPEAL FROM THE FORTIETH JUDICIAL DISTRICT COURT
PARISH OF ST. JOHN THE BAPTIST, STATE OF LOUISIANA
NO. 15,514, DIVISION "B"
HONORABLE E. JEFFREY PERILLOUX, JUDGE PRESIDING


October 23, 2019


**HANS J. LILJEBERG**
**JUDGE**


Panel composed of Judges Jude G. Gravois,
Robert A. Chaisson, and Hans J. Liljeberg


<u>**AFFIRMED; REMANDED WITH INSTRUCTIONS**</u>
**HJL**
**JGG**
**RAC**

COUNSEL FOR PLAINTIFF/APPELLEE,
STATE OF LOUISIANA
    Honorable Bridget A. Dinvaut
    Geoffrey M. Michel

COUNSEL FOR DEFENDANT/APPELLANT,
CORY BARTHOLOMEW
    C. Gary Wainwright

**LILJEBERG, J.**

Defendant appeals his convictions and sentences for attempted second degree murder and aggravated criminal damage to property. For the following reasons, we affirm. We also remand for correction of an error patent.

**PROCEDURAL HISTORY**

Defendant, Cory Bartholomew,[1] was charged with three counts of aggravated assault with a firearm in violation of La. R.S. 14:37.4 (counts one, two, and three), attempted second degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1 (count four), and aggravated criminal damage to property in violation of La. R.S. 14:55 (count five). On October 30 and 31, and November 2, 2017, trial was held on counts four and five only, and a twelve-person jury found defendant guilty as charged on both counts. On April 16, 2018, defendant was sentenced to imprisonment at hard labor for 40 years without benefit of parole, probation, or suspension of sentence on count four, attempted second degree murder, and imprisonment at hard labor for five years on count five, aggravated criminal damage to property, with the sentences to run concurrently with each other.[2] Defendant appeals.

**FACTS**

Darville Washington testified that on December 13, 2015, at approximately 4:00 p.m., his friends—Rickey Preston, Shawn Stipe, and Lee Eric Lockett—came to his house, after which they went to a parade in Gonzales. When the parade was over, they asked Mr. Washington to drop them off at Bozy's Lounge on Sixth Street in Edgard. Mr. Washington drove past Bozy's and then by a brown vehicle that he knew his cousin, Cory Bartholomew (defendant), was in. Mr. Washington

---

[1] Throughout the record before us, defendant's name is spelled both "Cory" and "Corey." For consistency, defendant's name will be spelled "Cory" in this opinion.
[2] The State severed counts one, two, and three, and proceeded to trial on counts four and five. On the same date as sentencing on counts four and five, the State entered a nolle prosequi on counts one, two, and three.

18-KA-670　　　　　　　1

subsequently "started burning rubbers," which he explained meant to apply the brake and gas pedals at the same time. Less than two seconds later, he saw defendant exit the driver's side of the brown vehicle, walk "straight up" behind the truck Mr. Washington was in, point something at him and "open fire" on the truck. Mr. Washington testified that although he was looking forward and was shot in the back of the neck, he was positive that defendant was the shooter. He explained that he was looking out of the back windshield and the side back windshield as defendant was exiting his vehicle and approaching the truck.

Cameras around Bozy's captured the incident. Video of the incident was shown to the jury. While observing the video, Mr. Washington testified that he saw his truck pulling up, after which "Bosco," defendant's uncle, exited the brown vehicle and ran off. He testified that he then observed defendant "getting in the road," unloading his gun, and chasing after the truck. Mr. Washington testified that after the shooting, he drove back up Sixth Street to River Road away from defendant and Bozy's. As he was driving, he felt his body become weaker, and he thought he was going to pass out. Mr. Washington testified that he could not drive any further, so Mr. Preston began driving and brought him to Mr. Preston's sister's house on Teddy Lane in Edgard. The last thing Mr. Washington remembered before passing out was going down Sixth Street.

Mr. Washington testified that he regained consciousness two days later at University Hospital. The police came and took his statement. They also showed him a six-man lineup, and he positively identified defendant as the shooter. Mr. Washington recalled writing on the lineup: "[b]eing in Edgard I used to hang with him, yes. He is the person that shot me."

Mr. Washington stated that sometime after the incident, he was approached outside Bozy's one night by defendant's brother, Chris Bartholomew, and his mother, Simone Bartholomew. He testified that Chris asked how much money he

would take to "sit down and let this go." He maintained that defendant's mother did not talk about money but said she hoped "this be gone [sic]" and that they could "work this out." Mr. Washington testified that when they approached him outside of Bozy's, he was alone, so he agreed to everything Chris said knowing that he was not going to go forward with it. He explained that he did not want to get caught in the same predicament as before and get shot again. Mr. Washington also asserted that Chris' "partner" came to him one time with $3,000 and told him to take it, but he did not do so.

Mr. Washington testified that when he was shot in the back of the neck, the bullet grazed his spinal cord and was still sitting in the center of his neck. He asserted that his doctors were afraid to take it out because it was "so close." Mr. Washington testified that his doctors told him that because he could still move his feet and "everything else," muscle tissue would grow around the bullet and hold it in the same spot.

Detective Michael Pugh of the St. John Parish Sheriff's Office testified that he executed search warrants on a brown 2000 Ford Crown Victoria, which was the vehicle defendant was in, and a white 2015 Dodge Ram truck, which was the vehicle the victim was in. He took photographs of those vehicles during the search, which were later admitted at trial. Detective Pugh testified that he located a Louisiana State ID with defendant's name on it "in the dashboard" of the brown vehicle. He also recovered an unknown caliber projectile in the bed of the truck. Detective Pugh testified that he located a bullet hole on the back of the truck on the passenger side. He also noted that the rear glass of the truck on the driver's side had been shattered. Detective Pugh explained that there were bullet holes in the front and back of the rear seat headrest and bullet holes in the front and back of the driver-side seat headrest. He testified that the evidence indicated that one of the projectiles traveled from the rear shattered glass toward the driver's seat.

Detective Byron Smith of the St. John Parish Sheriff's Office testified that on December 13, 2015, he was dispatched to East 14th Street regarding a subject who had been shot. When he walked inside the door, he observed Mr. Washington on his knees with his upper torso and head on the sofa. Detective Smith searched Mr. Washington's body while talking to him and found a wound on the back of his neck. Mr. Washington subsequently told Detective Smith that Cory Bartholomew had shot him on East Sixth Street in front of Bozy's. Detective Smith testified that there were many individuals inside the residence. He spoke to several of them who said they were in the truck, but they would not provide any additional information.

Gilbert Bartholomew III testified that his nickname is "Bosco," that he lives in Edgard, and that defendant is his nephew. He further testified that on December 13, 2015, he was inside Bozy's Lounge cleaning up. He got two drinks and left, after which he got into his father's vehicle, the brown Crown Victoria, and went to sleep. Gilbert III testified that a couple of hours later he heard a gunshot, but he did not know where it was coming from. He explained that he raised his head and saw an individual running, so he ran. He denied that anyone was in the vehicle with him that night. Gilbert III asserted that everyone used that vehicle, and he did not know who was using it that night. He viewed video of the incident and identified himself exiting the vehicle and then running, but he denied seeing an individual getting out of the vehicle on the driver's side. Gilbert III testified that he did not know who shot Mr. Washington. He stated that he heard more gunshots while he was running and did not look back.

Gilbert Bartholomew Jr. testified that he lives in Edgard and that defendant is his grandson. He also testified that he owns the brown Crown Victoria and that he allows his family, including defendant, to use it. Gilbert Jr. could not recall who had it on the night of December 13, 2015.

Anthony Goudia testified that at the time of the incident, he was working as a detective for the St. John Parish Sheriff's Office, and he investigated the shooting in this case. He viewed the video of the incident and stated that it showed a light-colored car parked in the parking lot. He observed the exhaust and brake lights on the car and opined that it was running. In the video, Mr. Goudia then saw a white truck start to pass in front of the light-colored car. Prior to the truck getting a few feet away from the car, a black male ("Bosco") exited the passenger side and ran toward Bozy's. Mr. Goudia testified that immediately thereafter, he saw a short black male with "dreads" or long hair get out of the driver's side of the car, walk toward the street where the white truck was passing, get in the street, and start firing at the white truck.

Mr. Goudia also testified that the video showed "Bosco" looking back toward the street where the white truck was passing and where the black male was shooting. Mr. Goudia quickly developed defendant as a suspect based on the victim's statement. He added that he had known of defendant for 10 or 12 years because he is from that area. He also testified that Gilbert Jr. told him that his grandson, defendant, had his vehicle that evening. Mr. Goudia noted that the video showed that before the shooting, the white truck was spinning its tires and making smoke, and the windows of the truck were up. He testified that he saw four flashes in front of the Crown Victoria and that the police recovered four shell casings on the scene that correlated with what he saw on the video. Mr. Goudia stated that no gun was ever recovered.

Following Mr. Goudia's testimony, the State introduced the victim's medical records from University Medical Center into evidence.

After the State rested its case, Simone Bartholomew testified that defendant was her son and that she "knew of" Mr. Washington. Ms. Bartholomew also testified that Mr. Washington followed her home after they came to court the last

time. She claimed that she stopped at a grocery store and that Mr. Washington pulled on the side of her and asked her for $15,000 or $20,000 to pay his doctor bill. She claimed that Mr. Washington said he did not know who shot him. Ms. Bartholomew stated that she then drove away and called her attorney. She testified that she did not give Mr. Washington any money.

Chris Bartholomew testified that he had a felony drug conviction and that defendant was his younger brother. He was not at Bozy's on December 13, 2015, when the incident occurred. Chris claimed that Mr. Washington approached him one or two weeks after he got out of the hospital and asked Chris to "pay him off" so "this could go away." He explained that he was a professional gambler and that he and Mr. Washington gambled together in the past. Chris asserted that Mr. Washington knew he carried a lot of money and that he asked for $15,000. Chris said he told Mr. Washington that he did not have that kind of money. He claimed that Mr. Washington asked him for money on more than one occasion. Chris noted that he and defendant are close in age, that they live together, and that they "hang out a lot." He stated that he would do anything for defendant.

Mr. Washington testified for the State in rebuttal that after a prior court hearing, he went to Bozy's, and defendant's mother was there. He explained that defendant's mother approached him, but he never told her that he did not know who shot him. Mr. Washington insisted that defendant shot him on December 13, 2015.

## LAW AND DISCUSSION

In his first assignment of error, defendant contends that his conviction for attempted second degree murder violates due process. He argues that the evidence was insufficient to support this conviction, because the State did not prove beyond a reasonable doubt that he had the specific intent to kill the victim. Rather, he claims the evidence showed that Mr. Washington was merely wounded by ballistic

fragments during the offense of aggravated criminal damage to property when a bullet hit the truck and fragmented, causing the victim to suffer a "minor wound." Defendant also complains the victim was allowed to falsely testify that he still had a bullet in his neck, which the State knew was incorrect, producing the impression that he fired directly at the victim's head or neck. He contends that the victim's false testimony went to the "heart of the case," and he must be granted a new trial.

In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Neal*, 00-0674 (La. 6/29/01), 796 So.2d 649, 657, *cert. denied*, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002).

In cases involving circumstantial evidence, the trial court must instruct the jury that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Mitchell*, 99-3342 (La. 10/17/00), 772 So.2d 78, 83; *State v. Washington*, 03-1135 (La. App. 5 Cir. 1/27/04), 866 So.2d 973, 977.

In this case, defendant was convicted of one count of attempted second degree murder. In order to prove attempted second degree murder, the State must establish beyond a reasonable doubt that the defendant specifically intended to kill a human being and that he committed an overt act in furtherance of that goal. La.

R.S. 14:30.1(A)(1) and La. R.S. 14:27; *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So.2d 434, 437; *State v. Bannister*, 11-602 (La. App. 5 Cir. 2/14/12), 88 So.3d 628, 634, *writ denied*, 12-628 (La. 6/15/12), 90 So.3d 1060. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent need not be proven as a fact but may be inferred from the circumstances surrounding the offense and the defendant's conduct. *State v. Holmes*, 12-579 (La. App. 5 Cir. 5/16/13), 119 So.3d 181, 191, *writ denied*, 13-1395 (La. 1/10/14), 130 So.3d 318. Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person, as well as the extent and severity of the victim's injuries. *Id.*

In the instant case, the State presented sufficient evidence to show that defendant had the specific intent to kill the victim. The testimony of the victim and the video of the shooting reflect that after the victim drove past defendant and spun his wheels, defendant exited his vehicle, stood right behind the victim's truck, pointed a gun toward the victim in the truck, and fired it more than once. Detective Pugh's testimony and the photographs of the victim's truck indicate that one of the bullets broke the glass on the back of the truck on the driver's side, traveled through the driver's side back seat and the driver's side front seat, after which it struck the victim, who was sitting in the driver's seat, in the back of the neck. Mr. Washington testified that the "bullet" grazed his spinal cord and was still sitting in the center of his neck, because the doctors were afraid to take it out.

In his defense, defendant presented the testimony of his mother, Simone Bartholomew, who testified that the victim, Mr. Washington, asked her for a large sum of money to pay his medical bills and told her that he did not know who shot him. He also presented the testimony of his brother, Chris Bartholomew, who

asserted that the victim approached him one or two weeks after he got out of the hospital and asked that he "pay him off" so "this could go away."

The credibility of witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; the credibility of the witnesses will not be reweighed on appeal. *State v. Rowan*, 97-21 (La. App. 5 Cir. 4/29/97), 694 So.2d 1052, 1056. Additionally, under Louisiana law, a victim's or witness' testimony alone is usually sufficient to support the verdict. *State v. Munson*, 12-327 (La. App. 5 Cir. 4/10/13), 115 So.3d 6, 13, *writ denied*, 13-1083 (La. 11/22/13), 126 So.3d 476. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness' testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Turner*, 05-75 (La. App. 5 Cir. 5/31/05), 904 So.2d 816, 823, *writ denied*, 05-2591 (La. 5/26/06), 930 So.2d 20.

In the instant case, the jury heard the testimony of all of the witnesses and apparently found the State's witnesses to be credible. There is no internal contradiction or irreconcilable conflict with the physical evidence, including the video of the shooting.

Defendant also argues the evidence did not show that the victim was seriously injured in the incident. However, the offense of attempted second degree murder does not require that the victim actually sustain a serious injury.[3] Rather, it requires the specific intent to kill, which may be inferred from the circumstances surrounding the offense and the defendant's conduct. Defendant's conduct of pointing a gun and firing it toward the victim in the truck are circumstances from which the jury could have reasonably inferred that defendant had the specific intent to kill.

---

[3] Nevertheless, the record in this case shows that the victim's injuries were serious. The medical records reflect that defendant had ballistic fragments at the posterior neck and scalp and that he sustained a fracture of the second cervical vertebrae.

Defendant also complains that the victim was allowed to repeatedly testify that he still had a "bullet" in his neck, though he only had a "bullet fragment," thereby producing the false impression that he fired directly at the victim's head or neck. However, there is no evidence that the victim testified falsely. The record does not reveal whether or not the victim was aware that he had a portion of a bullet in his neck, as opposed to an entire bullet. Even if the victim knew this information, he may not have believed the difference between the two was relevant. Further, it is unlikely that this discrepancy had any effect on the jury's verdict.

In light of the foregoing, we find that a rational trier of fact could have found that the evidence was sufficient under the *Jackson* standard to support defendant's conviction for attempted second degree murder. [4,5]

In his second assignment of error, defendant argues that his 40-year sentence for attempted second degree murder is constitutionally excessive given the facts of the instant case. He contends that the pre-sentence investigation report ("PSI") contained incorrect information that the victim suffered life-threatening injuries. He complains that the PSI recommended a maximum 50-year sentence based upon the alleged severity of the victim's injuries and defendant's lack of remorse, but he notes that both the State and the trial court agreed prior to trial that the victim's

---

[4] Defendant only challenges the sufficiency of the evidence regarding his conviction for attempted second degree murder. Nevertheless, a review of the record under *State v. Raymo*, 419 So.2d 858, 861 (La. 1982), shows that the evidence was also sufficient under the *Jackson* standard to establish the essential statutory elements of aggravated criminal damage to property. La. R.S. 14:55(A) provides that aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered by any means other than fire or explosion. In the instant case, the evidence reflects that defendant shot toward the truck the victim was driving, that there was damage to the truck, and that it was foreseeable that the lives of the occupants of the vehicle might be endangered.

[5] *See also State v. Jones*, 11-399 (La. App. 3 Cir. 11/2/11), 76 So.3d 1274, where the appellate court found sufficient evidence to support the conviction of attempted second degree murder which occurred when the defendant blocked in the victim's vehicle, exited his vehicle with a gun in his hand, approached the victim's vehicle, and began firing through the windows at the occupants inside; and *State v. Odom*, 511 So.2d 1214 (La. App. 2nd Cir. 1987), *writ denied*, 515 So.2d 446 (La. 1987), where the appellate court found sufficient evidence to support the conviction of attempted second degree murder which occurred when the defendant intentionally and repeatedly fired a deadly weapon at the victim's car with at least three shots actually hitting the victim's car.

injuries and the damage to the truck merited a 10-year sentence. He indicates that he was punished with a more severe sentence for exercising his right to a jury trial.

Defendant also maintains that the record does not reflect that the trial court was ever made aware of the actual injuries the victim suffered, namely, two minor ballistic fragment wounds—one in the neck and one in the scalp. He asserts that he is a young man who lashed out inappropriately in response to the "purposefully provocative goading" by the victim. Defendant notes that he was employed, had no prior felony convictions, and that the victim only suffered a "minor wound" which does not make him the "worst of the worst." He argues that this Court should remand for a new sentencing hearing in which the trial court will be fully apprised of the actual injuries the victim sustained.

At the sentencing hearing, defendant did not wish to say anything before sentencing, and the State indicated that the victim did not wish to make a formal statement. Afterward, the trial judge stated:

> All right. The Court has carefully studied the presentence report, which includes the factors that were listed therein. The Court has considered these matters, as well as the nature of the present offense, in light of the provisions of Article 894.1, and the Court makes the following findings regarding the sentence:
>
> First and foremost, the Court recognizes the serious nature of the offense for which the defendant was convicted. These are determined to be and considered to be crimes of violence, as defined under Louisiana Revised Statute 14:2, and which resulted in life-threatening injuries to the victim, Mr. Darville Washington, as well as damage to the vehicle occupied by Mr. Washington. The Court further notes that other lives were also jeopardized by defendant's conduct in firing a weapon at the occupied vehicle in utter disregard of the lives of the occupants. Indeed, Mr. Washington is lucky to be alive and will likely live with the unwanted souvenir of a lodged bullet in his neck for the rest of his life. Simply put, Mr. Bartholomew, your brazen act of violence is so egregious that a lesser sentence would deprecate the seriousness of the crime. You, sir, endangered life and property and were convicted by a jury of your peers.

The trial judge subsequently stated that he had reviewed the information contained in the PSI and the sentencing guidelines set forth in the Code of Criminal Procedure. He then sentenced defendant to 40 years at hard labor without benefit of parole, probation, or suspension of sentence.[6]

Following sentencing, defense counsel noted his objection for the record "for purposes of appeal." He did not specifically state objections to the sentence nor did he file a written motion to reconsider sentence. This Court has consistently held that a defendant's failure to state a specific ground upon which a motion to reconsider sentence is based limits a defendant to a review of the sentence for constitutional excessiveness. La. C.Cr.P. art. 881.1(E); *See also State v. Escobar-Rivera*, 11-496 (La. App. 5 Cir. 1/24/12), 90 So.3d 1, 8, *writ denied*, 12-0409 (La. 5/25/12), 90 So.3d 411. Consequently, we find that defendant is limited to a bare review of his sentence for constitutional excessiveness. *State v. McGee*, 04-963 (La. App. 5 Cir. 1/11/05), 894 So.2d 398, 412, *writ denied*, 05-0593 (La. 5/20/05), 902 So.2d 1050.

The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence is within statutory limits, it can be reviewed for constitutional excessiveness. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So.2d 1, 4. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *Id.* A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *State v. Lawson*, 04-334 (La. App. 5 Cir. 9/28/04), 885 So.2d 618, 622.

---

[6] The trial judge also sentenced defendant to five years at hard labor for the aggravated criminal damage to property conviction; however, defendant is not challenging that sentence on appeal.

A trial judge has broad discretion when imposing a sentence, and a reviewing court may not set a sentence aside absent an abuse of that discretion. The issue on appeal is whether the trial court abused its discretion, not whether another sentence might have been more appropriate. *State v. Dorsey*, 07-67 (La. App. 5 Cir. 5/29/07), 960 So.2d 1127, 1130. The appellate court shall not set aside a sentence for excessiveness if the record supports the sentence imposed. *State v. Pearson*, 07-332 (La. App. 5 Cir. 12/27/07), 975 So.2d 646, 656. In reviewing a trial court's sentencing discretion, three factors are considered: 1) the nature of the crime; 2) the nature and background of the offender; and 3) the sentence imposed for similar crimes by the same court and other courts. *Id*.

Defendant was convicted of attempted second degree murder in violation of La. R.S. 14:27 and La. R.S. 14:30.1. He was facing a sentencing range of 10 to 50 years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court sentenced him to 40 years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Therefore, defendant's 40-year sentence is within the statutory range.

Although defendant did not have any prior felony convictions, the record reflects that defendant had prior arrests for criminal activity. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. *State v. Youngblood*, 18-445 (La. App. 5 Cir. 5/22/19), 274 So.3d 716, 744.

Also, if a trial judge has agreed to impose a particular sentence pursuant to a plea bargain, this does not restrict that judge from imposing a more severe sentence if the defendant elects to go to trial and is convicted. *State v. Aleman*, 01-743 (La. App. 5 Cir. 1/15/02), 809 So.2d 1056, 1066, *writ denied*, 02-0481 (La. 3/14/03), 839 So.2d 26. Further, with respect to the lack of remorse, under La. C.Cr.P. art. 894.1, the trial court can consider any relevant aggravating circumstances not

otherwise specified in the article. The article does not prohibit the trial court from considering a defendant's lack of remorse. *See State v. L.A.C.*, 07-1411 (La. App. 3 Cir. 4/30/08), 982 So.2d 277, 279.

Additionally, the jurisprudence supports defendant's 40-year sentence for attempted second degree murder. In *State v. Bradstreet*, 16-80 (La. App. 5 Cir. 6/30/16), 196 So.3d 876, *cert. denied*, 16-1567 (La. 6/5/17), 220 So.3d 752, this Court upheld the defendant's 40-year sentence on each count of attempted second degree murder, noting that the two victims were shot multiple times and that the shootings occurred in a residential neighborhood potentially risking harm to others nearby. In *State v. Thomas*, 10-269 (La. App. 3 Cir. 10/6/10), 48 So.3d 1210, 1217, *writ denied*, 10-2527 (La. 4/1/11), 60 So.3d 1248, *cert. denied*, 565 U.S. 859, 132 S.Ct. 196, 181 L.Ed.2d 102 (2011), the appellate court upheld the defendant's 40-year sentence for an attempted second degree murder conviction, noting that the defendant had an extensive criminal history and that he had fired into a crowd of people endangering multiple lives. See also *State v. Jones*, 12-0891 (La. App. 4 Cir. 8/7/13), 122 So.3d 1065, *writ denied*, 13-2111 (La. 4/11/14), 137 So.3d 1212, in which the Fourth Circuit upheld the two defendants' consecutive 40-year sentences for two counts each of attempted second degree murder.

In the instant case, we find that the trial court did not abuse its discretion in sentencing defendant to 40 years of imprisonment on the attempted second degree murder conviction. The evidence shows that defendant's reckless actions jeopardized the lives of the four occupants of the truck. As discussed above, the testimony of the victim and the video of the shooting reflect that defendant stood right behind the truck the victim was driving, pointed a gun at the victim and the truck, and fired it more than once. Detective Pugh's testimony and photographs of the victim's truck indicate that one of the bullets broke the glass on the back of the

truck on the driver's side, traveled through the driver's side back seat and the driver's side front seat, after which it struck the victim, who was sitting in the driver's seat, in the back of the neck. Also, because the victim was the driver of the truck, it was fortunate that he was able to pull over at some point and let someone else continue to drive. The lives of the occupants of the truck and others could have been further jeopardized if he had continued to drive after being shot.

The medical records indicate that defendant sustained a gunshot wound to the neck "amazingly not damaging any significant neurovascular structures." They also indicate that defendant had ballistic fragments at the posterior neck and scalp and a fracture of the second cervical vertebrae.

In light of the foregoing, we find that the 40-year sentence imposed in connection with defendant's attempted second degree murder conviction was not constitutionally excessive.

In his third assignment of error, defendant argues that he received ineffective assistance of counsel at the trial court level. He contends that his counsel was ineffective because he did not object to an erroneous jury instruction regarding attempted second degree murder. Defendant explains that the jury instruction regarding that offense was fatally flawed because it erroneously instructed the jury that either a specific intent to kill or to inflict great bodily harm was the standard, when a specific intent to kill was the appropriate standard.

The Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution safeguard a defendant's right to effective assistance of counsel. According to the United States Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), a defendant asserting an ineffective assistance claim must show: (1) that defense counsel's performance was deficient; and (2) that the deficiency prejudiced the defendant. The defendant has the burden of showing that "there is a reasonable

probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

Generally, an ineffective assistance of counsel claim is most appropriately addressed through an application for post-conviction relief filed in the district court, where a full evidentiary hearing can be conducted, if necessary, rather than by direct appeal. *State v. Taylor*, 04-346 (La. App. 5 Cir. 10/26/04), 887 So.2d 589, 595. If, however, the record contains sufficient evidence to rule on the merits of the claim and the issue is properly raised in an assignment of error on appeal, it may be addressed in the interest of judicial economy. *Id.* In the present case, the record contains sufficient evidence to consider the merits of defendant's claims.

La. C.Cr.P. art. 802 mandates that the trial court instruct the jury on the law applicable to each case. *State v. Cornejo-Garcia*, 11-619 (La. App. 5 Cir. 1/24/12), 90 So.3d 458, 462. The standard for reviewing jury charges requires that the charges be read as a whole. *State v. Hill*, 98-1087 (La. App. 5 Cir. 8/31/99), 742 So.2d 690, 698, *writ denied*, 99-2848 (La. 3/24/00), 758 So.2d 147.

La. C.Cr.P. art. 841(A) provides, in part, that "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence." A party may not assign as error the giving or failure to give a jury charge or any portion thereof unless an objection thereto is made before the jury retires or within such time as the court may reasonably cure the alleged error. La. C.Cr.P. art. 801(C).

In the present case, defendant did not make a contemporaneous objection to the jury instruction at issue and, thus, he is not entitled to review of this issue. Nevertheless, even if we consider defendant's argument, we find the inaccurate jury instruction was harmless and, thus, defendant was not prejudiced by counsel's failure to object to it.

18-KA-670                                    16

In *State v. Hongo*, 96-2060 (La. 12/2/97), 706 So.2d 419, the Louisiana Supreme Court held that an erroneous jury instruction which improperly includes intent to inflict great bodily harm as an element of attempted second degree murder is subject to a harmless error analysis. The Court found that there was no argument or evidence presented to the jury which would support a finding that the defendant had the intent to only inflict great bodily harm and that no reasonable jury could have concluded that the defendant had the intent to only inflict great bodily harm. *Id.* at 422. The Court further found that the trial court's erroneous inclusion of intent to inflict great bodily harm did not prejudice the defendant nor would its omission have affected the verdict. It concluded that because the defendant was not prejudiced by his counsel's failure to object, he failed to satisfy the second prong of an ineffective assistance claim. *Id.*

Additionally, in *Bishop*, 835 So.2d at 438-439, the defendant argued that the trial court read an erroneous jury instruction which led jurors to believe that they could convict him of attempted second degree murder based only on a finding that he possessed the specific intent to inflict great bodily harm and that such error was reversible. The Louisiana Supreme Court found that the trial court's erroneous jury instruction was harmless in light of the overwhelming evidence presented that the defendant had the specific intent to kill the victim. *Id.* at 440.

Likewise, in *State v. Frinks*, 18-899 (La. App. 3 Cir. 6/12/19), 274 So.3d 635, the defendant contended that he was deprived of a fair trial because the trial court incorrectly instructed the jury that the State needed to prove he had the specific intent to kill or to inflict great bodily harm in order to convict him of either the charged offense of attempted second degree murder or the lesser included offense of attempted manslaughter. The Third Circuit found that the evidence was sufficient to satisfy the State's burden, beyond a reasonable doubt, of proving that the defendant had the specific intent to kill the victim, who suffered a serious chest

wound and had a collapsed lung. The appellate court found that under *Hongo*, *supra*, the trial court's inaccurate instruction regarding specific intent was harmless error because the jury would have reached the same verdict given the sufficiency of the evidence.

In the instant case, the jury was instructed as follows:

> Attempted second degree murder occurs when the defendant had a specific intent to kill or inflict great bodily harm
>
> And the defendant does [or omits] an act for the purpose of and tending directly toward the commission of the crime of second degree murder.
>
> ****
>
> Thus, in order to convict the defendant of ATTEMPTED SECOND DEGREE MURDER, you must find beyond a reasonable doubt:
>
> (1) that the defendant acted with a specific intent to kill.
> (2) that the defendant did or omitted an act for the purpose of and tending directly toward the commission of the crime of second degree murder.
> (Emphasis as found in original).

A review of the jury charges indicates that while the jury initially received an inaccurate instruction regarding the general definition of attempted second degree murder, including that it can be committed if a defendant has the specific intent to kill or to inflict great bodily harm, the jury was thereafter instructed that in order to convict defendant of attempted second degree murder, it must find that defendant acted with the specific intent to kill. While the jury did receive an erroneous instruction at one point, we find this error was harmless in light of the overwhelming evidence presented that defendant had the specific intent to kill the victim. *See Hongo, supra; Bishop, supra; Frinks, supra.*

Defendant has failed to show a reasonable probability that, but for counsel's alleged error, the jury would have reached a different verdict. Accordingly, we

find that defendant has not shown that he received ineffective assistance of counsel.

**ERRORS PATENT**

The record was reviewed for errors patent, according to La. C.Cr.P. art. 920; *State v. Oliveaux*, 312 So.2d 337 (La. 1975); and *State v. Weiland*, 556 So.2d 175 (La. App. 5th Cir. 1990). On error requiring corrective action was noted.

The uniform commitment order (UCO) contains two columns, one for the disposition date and one for the sentencing date. The UCO reflects that both occurred on April 16, 2018. The transcript reflects that the sentencing date was April 16, 2018, and the disposition date, or date of conviction, was November 2, 2017. The transcript prevails. *State v. Lynch*, 441 So.2d 732 (La. 1983). As such, we remand the matter to the trial court for correction of the UCO to reflect the correct disposition date. We also order the Clerk of Court for the 40th Judicial District Court to transmit the corrected UCO to the appropriate authorities in accordance with La. C.Cr.P. art. 892(B)(2) and to the Department of Corrections' legal department. *See State v. Montero*, 18-397 (La. App. 5 Cir. 12/19/18), 263 So.3d 899, 909.

**DECREE**

For the foregoing reasons, we affirm defendant's convictions and sentences. We also remand to the trial court for correction of the Uniform Commitment Order.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

MARY E. LEGNON
INTERIM CLERK OF COURT

CHIEF DEPUTY CLERK

SUSAN BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**OCTOBER 23, 2019** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES
NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

_____
**MARY E. LEGNON**
INTERIM CLERK OF COURT

# 18-KA-670

## E-NOTIFIED
40TH DISTRICT COURT (CLERK)
HON. E. JEFFREY PERILLOUX (DISTRICT JUDGE)
HONORABLE BRIDGET A. DINVAUT (APPELLEE)
GEOFFREY M. MICHEL (APPELLEE)
GRANT L. WILLIS (APPELLEE)

J. PHILIP PRESCOTT, JR. (APPELLEE)
C. GARY WAINWRIGHT (APPELLANT)

J. TAYLOR GRAY (APPELLEE)
COLIN CLARK (APPELLEE)

## MAILED
HON. JEFFREY M. LANDRY (APPELLEE)
ATTORNEY GENERAL
LOUISIANA DEPARTMENT OF JUSTICE
1885 NORTH 3RD STREET
6TH FLOOR, LIVINGSTON BUILDING
BATON ROUGE, LA 70802